[Civ. No. 9505.    Fourth Dist., Div. One.    Jan. 30, 1969.]

EARL RAY HOLDER, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

---

Thomas Hunter Russell and Norman D. Causey for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas S. Kerrigan, Deputy Attorney General, for Respondent and for Real Party in Interest.

LAZAR, J. pro tem.*—Petitioner was convicted of a felony on November 27, 1961, and committed to state prison for the term prescribed by law. At the time of sentence section 1168,

---

*Assigned by the Chairman of the Judicial Council.

Penal Code, read as follows: ''Every person convicted of a public offense, for which imprisonment in any reformatory or State prison is now prescribed by law shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced to be imprisoned in a State prison, but the court in imposing the sentence shall not fix the term or duration of the period of imprisonment.''

In 1963 and 1967 the section was amended; a second paragraph was added reading, as amended:

''When a defendant has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, if it is deemed warranted by the diagnostic study and recommendations approved pursuant to Section 5079, the court may recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he had not previously been sentenced.''

In reliance upon the language just quoted petitioner made application to the superior court for probation. The application for probation was heard and denied on August 16, 1968, by minute order reading: ''Defendant's petition for probation under the provisions of P. C. 1168 is argued by counsel, and, by the Court, denied on the ground of lack of retroactivity of said statute.''

We construe the trial court's order to mean that the court considered itself without jurisdiction to adjudicate petitioner's application on its merits. This position is asserted by petitioner in his brief, is not denied by respondent, and is borne out by the record which shows: the Department of Corrections in its letter transmitting the diagnostic study to the trial court specifically suggested the trial court might be without jurisdiction to hear the application for probation because the statute was not retroactive in application; the court expressed in a letter to petitioner's counsel its concern about the point; in response defendant's counsel submitted a letter memorandum on the subject of the court's jurisdiction.

Respondent contends the second paragraph of section 1168[1] may not be deemed to apply to a defendant whose sentence was imposed before the effective date of the amendment to the statute, and relies upon section 3, Penal Code: ''No part of it [this code] is retroactive, unless expressly so declared.'' and cites *People* v. *Durbin,* 64 Cal.2d 474, 478 [50 Cal.Rptr. 657, 413 P.2d 433], and *DiGenova* v. *State Board of*

---

[1]Unless otherwise indicated all sections are Penal Code sections.

*Education,* 57 Cal.2d 167, 172 [18 Cal.Rptr. 369, 367 P.2d 865].

Petitioner basically relies upon section 4, Penal Code, reading: ''The rule of the common law, that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice.''

Petitioner argues a statute should be construed in favor of a defendant when reasonably susceptible of construction both for and against him (see *People* v. *Smith,* 131 Cal.App.2d Supp. 889 [281 P.2d 103]; *Walsh* v. *Department of Alcoholic Beverage Control,* 59 Cal.2d 757 [31 Cal.Rptr. 297, 382 P.2d 337]; Witkin, Cal. Crimes, § 16, p. 18), and urges, in effect, the guideline is to be found in the language of *In re Estrada,* 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948].

''Where the Legislature has not set forth in so many words what it intended, the rule of construction [Pen. Code, § 3] should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent.''

*Estrada* held section 3 ''is not a straitjacket'' (*Id.* at p. 746) compelling only prospective application to statutes not in terms stated to be retroactive and has no greater effect than to create a presumption that the legislative intention is that statutes shall operate prospectively ''when there is nothing to indicate a contrary intent in a statute.'' (*Id.* at p. 746)

█ It is certain that section 3 may now be considered at most a rule of construction. It is probably too late to question whether it ever should have been given an effect beyond the context of Penal Code, section 2, limiting it to the content of the code as adopted in 1872.[2] █ In any event, it should not be overlooked that a rule of construction becomes applicable only when uncertainty is found. We find no uncertainty in the provision under consideration. Clear statutory language no more needs to be interpreted than pure water needs to be strained. Witkin reminds us: ''There are limits to this freedom to tamper with statutory language . . . The primary

[2]The early cases appear to treat section 3 of the original Penal Code, Code of Civil Procedure and Civil Code more as a rule of substantive law than a rule of construction. (Cf. *Caulfield* v. *Doe,* 45 Cal. 221; *Sharp* v. *Blankenship,* 59 Cal. 288; *Bank of Ukiah* v. *Moore,* 106 Cal. 673, 680 [39 P. 1071].)

source of the legislative intent and purpose is in the words used; if these are clear the court should not seek hidden motives or objects which do not appear on the face of the statute or from its legislative history.'' (1 Witkin, Cal. Crimes, § 14, p. 16.) Our Supreme Court has said: '' 'While courts are no longer confined to the language [of the statute], they are still confined by it. Violence must not be done to the words chosen by the Legislature.' [Citation.] A standard of conduct prescribed by a statute would hardly command acceptance if the statute were given an interpretation contrary to the interpretation ordinary men subject to the statute would give it. 'After all, legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him.' [Citations.] If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.] Certainly the court is not at liberty to seek hidden meanings not suggested by the statute or by the available extrinsic aids. [Citation.]'' *(People* v. *Knowles,* 35 Cal.2d 175, 182-183 [217 P.2d 1].)

Respondent relies solely upon section 3 as having a prohibitive effect upon the availability of section 1168 under the circumstances of this case. No other reason has been advanced why the Legislature might have intended earlier offenders should not have available to them the contemporaneous approaches to supervision and rehabilitation which are implicit in the second paragraph of section 1168. ■ A recognized goal of the criminal punishment process is to minimize the population of penal institutions and to maximize rehabilitory efforts. Remedial measures should be open to all who can qualify and not be restricted arbitrarily to a group having no logical basis for differentiated treatment.

■ We rest our view of section 1168 on the ground that no reason has been made apparent which validly indicates the section means other than it says. The language is certain and employed without ambiguity; the meaning is equally untainted. We conclude the statute should be read and applied literally and without qualification and that no question of ''retroactivity'' in a jurisdictional context was before the court. (Cf. *Meyer* v. *Superior Court,* 247 Cal.App.2d 133 [55 Cal.Rptr. 350], in which ''thereafter'' was held unlimited as to time where ''retroactivity'' was raised by petition for writ of mandate.)

■ Respondent contends petitioner's petition for writ of mandate fails to show a diagnostic study in existence at the time of application for relief to the superior court, and cites *People* v. *Horton,* 264 Cal.App.2d 192, 195-196 [70 Cal. Rptr. 186], decided by this court. We view this point as a matter of demurrer or comparable objection below. The record evidenced by the file of the superior court, as transmitted to this court, reflects that such study was in existence, established by the very correspondence which gave rise to the error in the court below and the necessity for petition here.

It is ordered a peremptory writ of mandate issue requiring the Superior Court for the County of San Diego to hear on its merits petitioner's application for relief pursuant to Penal Code section 1168 as amended.

Brown (Gerald), P. J., and Coughlin, J., concurred.

The petition of the respondent and the real party in interest for a hearing by the Supreme Court was denied March 26, 1969.