[Civ. No. 4446. Fifth Dist. Apr. 25, 1979.]

JOSE L. CADIZ et al., Petitioners, v.
AGRICULTURAL LABOR RELATIONS BOARD,Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest.

**COUNSEL**

Seyfarth, Shaw, Fairweather & Geraldson, Joseph Herman, George Preonas, Bette Bardeen, Kenwood C. Youmans and Keith A. Hunsaker, Jr., for Petitioners.

Marvin J. Brenner, Ellen Lake, Thomas M. Sobel and Daniel G. Stone for Respondent.

Jerome Cohen, Sanford N. Nathan, John Rice-Trujillo, Tom Dalzell, Ellen Greenstone, Michael Heumann, Linton Joaquin, George C. Lazar, Dianna Lyons, Kirsten L. Zerger and James Ruthowski for Real Party in Interest.

**OPINION**

**BROWN (G. A.), P. J.**—In this proceeding Jose L. Cadiz, a farm worker, and his employer, M. Caratan, Inc. (Petitioners) jointly seek a writ of

mandate directing the Agricultural Labor Relations Board (ALRB) to set aside its order nullifying and dismissing their petition for decertification of the United Farm Workers of America, AFL-CIO (UFW), an agricultural union, and for an order directing that impounded ballots cast in a decertification election be counted. The central issue is the effect under the Agricultural Labor Relations Act (ALRA) of an existing one-year term collective bargaining agreement on the timeliness of a petition for an election to decertify the incumbent collective bargaining representative.

## FACTS

Pursuant to an election held under the ALRA on September 6, 1975, the agricultural employees of M. Caratan, Inc. elected the UFW to serve as their collective bargaining representative. Eighteen months later, on March 22, 1977, the board certified the UFW. Negotiations between the UFW and the employer continued for more than a year until May 11, 1978, when the employer and the union executed a one-year written collective bargaining agreement pursuant to the terms of the ALRA. By its terms the agreement would automatically renew itself unless either party gave the other party 60 days' notice prior to its expiration date requesting negotiations for a new agreement.

On August 25, 1978, approximately three and one-half months after the commencement of the one-year contract, petitioner Cadiz filed a decertification petition pursuant to Labor Code[1] section 1156.7,[2] subdivision

---

[1] All code references are to the Labor Code unless otherwise indicated.

[2] Section 1156.7 provides:

"(a) No collective-bargaining agreement executed prior to the effective date of this chapter shall bar a petition for an election.

"(b) A collective-bargaining agreement executed by an employer and a labor organization certified as the exclusive bargaining representative of his employees pursuant to this chapter shall be a bar to a petition for an election among such employees for the term of the agreement, but in any event such bar shall not exceed three years, provided that both the following conditions are met:

"(1) The agreement is in writing and executed by all parties thereto.

"(2) It incorporates the substantive terms and conditions of employment of such employees.

"(c) Upon the filing with the board by an employee or group of employees of a petition signed by 30 percent or more of the agricultural employees in a bargaining unit represented by a certified labor organization which is a party to a valid collective-bargaining agreement, requesting that such labor organization be decertified, the board shall conduct an election by secret ballot pursuant to the applicable provisions of this chapter, and shall certify the results to such labor organization and employer.

"However, such a petition shall not be deemed timely unless it is filed during the year preceding the expiration of a collective-bargaining agreement which would otherwise bar

(c), with the regional ALRB director (see § 1142) who over the objections of the UFW determined that the petition complied with all the statutory requirements for raising an issue of representation and, as required by the act (see § 1156.3, subd. (a)), ordered the election to be held on September 1, 1978, seven days after the petition was filed.

The election was held on schedule. Acting in response to the UFW's motion on August 31 to dismiss the petition as being untimely, the ALRB on September 1, 1978, ordered impoundment of the uncounted ballots to maintain the status quo pending resolution of the timeliness issue raised by the UFW. Petitioners' request for reconsideration of the impoundment order was denied by the ALRB on September 7, 1978.

On September 25, 1978, a three-to-two majority of the ALRB issued the decision challenged herein (*M. Caratan, Inc.* (1978) 4 ALRB No. 68), dismissing the decertification petition as untimely and vacating the election. In sum, the ALRB held that as to one-year contracts under the ALRA a petition for decertification will be timely only if filed during the last month of the contract and during the eleven months succeeding expiration of the agreement.

## DISCUSSION

Turning to the substantive issues first, we view the case as primarily one of applying the clear, unambiguous and unfettered language of section 1156.7, subdivision (c), which, to repeat, provides:

---

the holding of an election, and when the number of agricultural employees is not less than 50 percent of the employer's peak agricultural employment for the current calendar year.

"(d) Upon the filing with the board of a signed petition by an agricultural employee or group of agricultural employees, or any individual or labor organization acting in their behalf, accompanied by authorization cards signed by a majority of the employees in an appropriate bargaining unit, and alleging all the conditions of paragraphs (1), (2), and (3), the board shall immediately investigate such petition and, if it has reasonable cause to believe that a bona fide question of representation exists, it shall direct an election by secret ballot pursuant to the applicable provisions of this chapter:

"(1) That the number of agricultural employees currently employed by the employer named in the petition, as determined from his payroll immediately preceding the filing of the petition, is not less than 50 percent of his peak agricultural employment for the current calendar year.

"(2) That no valid election pursuant to this section has been conducted among the agricultural employees of the employer named in the petition within the 12 months immediately preceding the filing thereof.

"(3) That a labor organization, certified for an appropriate unit, has a collective-bargaining agreement with the employer which would otherwise bar the holding of an election and that this agreement will expire within the next 12 months."

"(c) Upon the filing with the board by an employee or group of employees of a petition signed by 30 percent or more of the agricultural employees in a bargaining unit represented by a certified labor organization which is a party to a valid collective-bargaining agreement, requesting that such labor organization be decertified, the board shall conduct an election by secret ballot pursuant to the applicable provisions of this chapter, and shall certify the results to such labor organization and employer.

"However, such a petition shall *not be deemed timely unless it is filed during the year preceding the expiration of a collective-bargaining agreement which would otherwise bar the holding of an election,* and when the number of agricultural employees is not less than 50 percent of the employer's peak agricultural employment for the current calendar year." (Italics added.)

Subdivision (b) of section 1156.7 (fn. 2, *ante*) establishes that an existing collective bargaining agreement shall bar a petition for election among the employees for so much of the term of the agreement as does not exceed three years. In labor law jargon this is referred to as a contract bar. It is to be noted that neither this section nor any other provision of the ALRA prohibits a one-year contract nor prescribes any other term for a collective bargaining agreement. It simply states that a contract for longer than three years will not act as a contract bar for a period in excess of that time. It does not pretend to prohibit a contract for any shorter period.

Subdivision (c) of section 1156.7 (see fn. 2, *ante*) creates an exception to this contract bar by providing that when 30 percent of the employees in the bargaining unit under the particular contract sign a petition requesting that the labor organization be decertified the ALRB shall direct an election to be held. The crucial language as to timing of a decertification petition specifically states that "*such a petition shall not be deemed timely unless it is filed during the year preceding the expiration of a collective-bargaining agreement which would otherwise bar the holding of an election . . . .*" (Italics added.)

This language on its face explicitly permits a decertification petition to be filed at any time during the term of a one-year contract and is too clear to permit any administrative or judicial tampering with its provisions.[3]

---

[3]The only substantive issue raised in these proceedings is the timeliness of the decertification petition. Presumably, at least for the purpose of this proceeding, all other

■ The guiding principle of interpretation was laid down by the Legislature in Code of Civil Procedure section 1858: "In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." That prime rule of construction has been adopted and restated by the cases. Thus, in *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 353-354 [139 P.2d 908], the Supreme Court instructed: "The intent of the Legislature must be ascertained from the language of the enactment and where, as here, the language is clear, there can be no room for interpretation." (See also *Teachers Management & Inv. Corp.* v. *City of Santa Cruz* (1976) 64 Cal.App.3d 438, 446 [134 Cal.Rptr. 523]; *Livingston* v. *Heydon* (1972) 27 Cal.App.3d 672, 677 [104 Cal.Rptr. 83].)

The court should not, of course, be concerned with considerations of legislative policy or wisdom. "Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature." (*Estate of Horman* (1971) 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785] (cert. den., 404 U.S. 1015 [30 L.Ed.2d 662, 92 S.Ct. 672]); see also *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 325 [109 P.2d 935].)

Notwithstanding these cardinal rules of construction the ALRB not only held that the Legislature did not mean what it plainly said in section 1156.7, subdivision (c), but went further and legislated its own rule by authorizing the filing of a decertification petition during a period which it thought to be the most desirable and wise period, that period being during the last month of a one-year contract and the succeeding eleven months after the contract's expiration.[4] It seems clear to us that the ALRB

precisionditions to the decertification election required by the ALRA are conceded. In sum, these prerequisites are: agreement is in writing (subd. (b)(1)); agreement incorporates the terms and conditions of employment (subd. (b)(2)); petition signed by 30 percent or more of employees (subd. (c)); number of employees not less than 50 percent of the employer's peak agricultural employment, referred to as the peak employment requirement (subd. (d)(1); § 1156.4); no valid election conducted within the 12 months immediately preceding the filing of the petition (subd. (d)(2); § 1156.5) referred to as the election bar; the labor organization was not certified within the immediately preceding 12-month period (§ 1156.6), referred to as the certification bar.

[4]Though the UFW agrees with the ALRB's position with respect to a one-year contract acting as a bar during its period, it disagrees with the ALRB's establishment of the period during which petitions can be filed primarily on the ground that permitting petitions during that period would be equally unsettling and destabilizing to labor relations and peace in the fields as that provided for by the statute. UFW urges that the time frame

exceeded its authority by thus arrogating unto itself the right to act contrary to the express terms of the statute. (*California Welfare Rights Organization* v. *Brian* (1974) 11 Cal.3d 237, 242 [113 Cal.Rptr. 154, 520 P.2d 970] (cert. den., 419 U.S. 1022 [42 L.Ed.2d 296, 95 S.Ct. 497]); *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].)

■ In support of its decision and order the ALRB relies primarily upon National Labor Relations Board (NLRB) precedent under the National Labor Relations Act (NLRA). Section 1148 provides that "The board shall follow *applicable* precedents of the National Labor Relations Act, as amended." (Italics added.) Similarly, in the context of the ALRA the Supreme Court has directed " '[w]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation. This rule is applicable to state statutes which are patterned after the federal statutes. [Citation.]' [Citations.]" (*Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 557 [147 Cal.Rptr. 165, 580 P.2d 665]; see also *Nishikawa Farms, Inc.* v. *Mahony* (1977) 66 Cal.App.3d 781, 787 [136 Cal.Rptr. 233].)

Since the passage of the NLRA in the mid-1930's the NLRB has developed certain general principles relating to existing collective bargaining contracts barring petitions for decertification or rival union petitions. However, unlike the ALRA the NLRA contains no legislative direction or guidelines governing the principles of a contract bar; accordingly, NLRB has developed rules solely as a matter of administrative discretion under the broad authority delegated to it by Congress under the NLRA. The NLRB has recognized that in developing its contract bar rules it is necessary to strike a proper balance between twin policy goals of justice to agricultural workers in permitting them a maximum scope in their freedom of choice of a union to represent them and to change or reject their collective bargaining representative and the objective of attaining stability in collective bargaining agreements by assuring that contracts remain in effect a sufficient period to permit the

---

adopted by the ALRB would introduce chaos, uncertainty and instability by rendering a renewal agreement impossible while a decertification petition is pending. The UFW then proceeds to suggest its own time periods. These disagreements serve to emphasize and to point up the validity of the conclusion that these matters are questions of legislative policy and wisdom which should be left to that body to resolve, which the Legislature has done in the statute as enacted.

relationship established by the contract to develop and mature. In nonseasonal industrial employments the NLRB has struck this balance by currently following a rule which establishes a 30-day open period (between 90 to 60 days before the expiration of a contract) during which representation petitions may be filed and a 60-day insulation period thereafter immediately preceding the expiration of the contract during which period no petition may be filed. In seasonal employments a representation petition may be timely filed commencing approximately at the end of the last seasonal peak of employment until 60 days before the end of the contract, the election being held during the next seasonal peak following the contract expiration date. The NLRB has no rule requiring any particular length of a collective bargaining agreement. It does have a maximum contract bar period of three years.[5]

Because the ALRB is not required to follow NLRB precedent in this area its reliance upon NLRB precedent is misplaced. Section 1148 requires the board to follow only "applicable" precedent. The principle as enunicated in *Belridge Farms, supra,* requires only that in the interpretation of the ALRA precedential value be given to the NLRA to the extent the provisions are derived from the federal act. (21 Cal.3d at p. 557.) In *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 412-413 [128 Cal.Rptr. 183, 546 P.2d 687], the Supreme Court instructed: "In addition, we observe that section 1148 directs the board to be guided by the 'applicable' precedents of the NLRA, not merely 'the precedents' thereof. From this language the board could fairly have inferred that the Legislature intended it to select and follow only those federal precedents which are relevant to the particular problems of labor relations on the California agricultural scene."

Accordingly, the NLRB precedent in this situation is inapplicable because there is no federal statute comparable to section 1156.7, subdivision (c), establishing a contract bar to elections and no statutorily authorized open period for filing. The NLRB precedents fixing the 30-day open period (between 90 to 60 days before expiration of the contract) conflicts with the 1-year open period contained in section 1156.7, subdivision (c). The one-year open period like many other provisions in section 1156.7, including the peak employment requirement (see also

---

[5]The petitioners and the UFW devote a large part of their briefs to discussing the wisdom or lack of wisdom and the desirability or undesirability of the rules adopted by the ALRB, pointing out the conflicts between the ALRB's decision and the NLRB rules. Since we will hold the ALRB did not have the authority to ignore the statute and adopt a period other than the year prescribed therein, we perceive no purpose in discussing these arguments.

§§ 1156.4, 1156.3, subd. (a)(1)) and the mandate that the election be held within seven days of the filing of the petition (see § 1156.3, subd. (a)) are adapted to the peculiar conditions found in California agriculture. As Professor Levy, an adviser to the drafters of the act has noted, the one-year open period was felt essential because of the one-year cyclical nature of agriculture: "It was felt that, given the seasonal nature of agricultural employment, the one-year period was necessary to insure that a union could file at peak season, when the required complement of employees would be present. In addition, it prevents an incumbent union from blocking any challenge by arranging for its contract to terminate on a date when the required 50 percent of the peak work force would not be present, thus preventing a rival union or dissatisfied employees from filing an election petition." (Levy, *The Agricultural Labor Relations Act of 1975—La Esperanza De California Para El Futuro* (1975) 15 Santa Clara Law. 783, 800, fn. 106.)

Thus the NLRB's applicability is limited by the fact that these adaptations were made to tailor the California statute to the special requirements of the California agricultural labor scene. The peak. employment requirement prerequisite coupled with the requirement that an election be held within seven days of filing of the petition insure that the elections will be conducted when a meaningful number of employee workers are employed and will allow employees to freely decide upon their representation. The ALRA further promotes the speedy resolution of representation issues by statutorily fixing the collective bargaining unit and providing for post rather than preelection hearings on issues bearing on elections. (Lab. Code, § 1156.3, subd. (c); Levy, *The Agricultural Labor Relations Act of 1975—La Esperanza De California Para El Futuro* (1975) 15 Santa Clara Law. 783, 796.)[6]

These differences point up the inapplicability of the NLRB precedent to the California statutory contract bar. By giving weight to NLRB precedent the ALRB has ignored the California statutory provisions which distinguish California agriculture from the industries referred to in the NLRB decisions.

■ The ALRB and UFW argue that the language of section 1156.7, subdivision (c), is not clear, urging that the one-year exception to the

---

[6]Obviously the rule adopted by the ALRB fixing a 30-day period before the expiration of a contract for filing of a petition would not meet the peak employment requirements of the ALRA because peak employments in California agriculture normally occur in the summer and early fall. Thus employees would effectually be deprived of the right to change their representative during the entire one-year period of a contract under the ALRB's rule.

contract bar only applies during the last year of multi-year contracts. Quoting from section 1156.7, subdivision (c), the UFW argues: " '. . . a [decertification] petition shall not be deemed timely unless it is filed *during the year preceding the expiration* of a collective-bargaining agreement *which would otherwise bar the holding of an election* . . . .' [Italics added.] [¶] The two phrases underlined above are incompatible with an intent to permit decertification petitions during a one-year contract. The first phrase implies an assumption that the term of labor agreements, subject to decertification, would run more than one year." (Fn. omitted.) It is further their position that if a decertification petition were timely during the entire term of a one-year contract such a contract would not be an agreement which "would otherwise bar the holding of an election."

A close examination reveals this reasoning is untenable. Subdivision (b) of section 1156.7 plainly and clearly establishes only the maximum length of the contract bar as being three years. It states the contract "shall be a bar to a petition for an election among such employees *for the term of the agreement,* but in any event such bar shall not exceed three years. . . ." (Italics added.) On its face therefore it applies to one-year contracts. Under the "otherwise bar" language of section 1156.7 a one-year contract would bar a petition if it were not for the exception stated in subdivision (c) that plainly permits the election to be held "during the year preceding the expiration of a collective-bargaining agreement . . . ." Thus there is nothing inconsistent or that requires interpretation in these provisions.[7]

■ The board and the UFW ask that the court ignore the literal language of the statute because, they argue, a facial application of its language would lead to absurd results and would encroach upon the manifest purpose of the legislation as a whole. (*Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 785 [138 Cal.Rptr. 378]; *Teachers Management & Inv. Corp.* v. *City of Santa Cruz* (1976) 64 Cal.App.3d 438, 446 [134 Cal.Rptr. 523].)

An examination of the few cases which have applied this principle indicates that the language being considered was not in fact clear and the

---

[7]This assumes, of course, that the other requirements of section 1156.7 are met, as they were here. That is, that the agreement was not negotiated prior to the effective date of the act (subd. (a)) and was in compliance with subdivision (b)(1), requiring the contract to be in writing, and subdivision (b)(2), requiring all of the substantive terms and conditions of employment to be in the contract. If these conditions were not met the agreement would not "otherwise bar" the petition. It is obvious this is what the Legislature had in mind in using the "otherwise bar" language, not the time of filing the petition for decertification.

principle was utilized in the interpretive process. In any event the principle as stated requires as a prerequisite to its application a determination that it is obvious that to give literal effect to the language would be to abort the manifest purposes of the legislation as a whole and would lead to absurd results. Neither precondition is satisfied here.

In support of the application of the principle to these proceedings the board and the UFW express a concern that because of the severe tension surrounding initial one-year contracts between agricultural employees and certified bargaining agents these contracts must be insulated from challenges regardless of the adverse impact on freedom of choice of employees and upon renewal agreements. Essentially this argument, like the other policy arguments offered in support and in opposition to a contract bar during a one-year contract, has been resolved by the Legislature and any change should come from that body. The ALRA refers to the dual objectives of the legislation. The preamble to the ALRA sets forth as one of its purposes the promotion of stability in labor relations.[8] Section 1140.2 sets forth as another object the protection of employees' right to freedom of choice.[9]

Permitting a challenge to a contract during its first year will not per se lead to absurd results. The Legislature is vested with the authority to balance the potentially conflicting purposes of the ALRA—to provide stability in labor relations and to assure that workers are left free to select their union representatives. By its decision herein the ALRB has opted to place heavier emphasis upon stability in labor relations in the earlier periods of a contract, by choosing to prefer this value over the goal of assuring to employees the right to change their representative. The Legislature's choice of the latter objective during the early periods of the development of collective bargaining under the act is in full accord with the purposes of the ALRA stated in section 1140.2 (see fn. 9, *ante*) and with NLRB precedent. Thus in *General Motors Corporation, Detroit Trans. Div.* (1953) 102 NLRB 1140, the NLRB said: "During the period when the techniques and potentialities of collective bargaining were first being slowly developed under the encouragement and protection of Federal legislation, the Board laid greater emphasis upon the right of workers to select their representative frequently than upon prolonged

[8]"Sec. 1. In enacting this legislation the people of the State of California seek to ensure peace in the agricultural fields by guaranteeing justice for all agricultural workers and stability in labor relations." (Stats. 1975, Third Ex. Sess., ch. 1, § 1, p. 4013.)

[9]Section 1140.2 states: "It is hereby stated to be the policy of the State of California to encourage and protect the right of agricultural employees to full freedom of association, self-organization, and designation of representatives of their own choosing. . . ."

adherence to a bargaining agent, once chosen." (*Id.*, at p. 1142.) (See also *Reed Roller Bit Company* (1947) 72 NLRB 927, 930.) Consonant with this concept is the reality that the NLRB has progressively extended the maximum period of a contract bar from one to three years.

Like the period referred to by the NLRB, the processes and techniques of collective bargaining in agriculture are in their incipient stages.

The ALRB has no authority to overrule the legislative determination because it apparently considers the stability of established contractual relations more important than the rights of workers to decertify their bargaining representative. (See *Bodinson Mfg. Co. v. California E. Com.*, *supra*, 17 Cal.2d 321, 325.)

Moreover, the other bars in the ALRA add some stability to labor relations. The election bar (§ 1156.5) establishes an absolute bar to petitions for 12 months after a collective bargaining representative is elected. The certification bar (§ 1156.6) establishes an absolute bar for 12 months after the ALRB has certified the elected representative. Both of these provisions are incorporated into subdivision (d) of section 1156.7. It is clear therefore that a decertification petition can only be filed after a union has been the representative for more than 12 months. In the present case the employer's employees had been bound to the UFW for almost three years at the time the decertification petition was filed. This statutory scheme combined with the creation of exceptions to the contract bar suggests a finely drawn legislative balance allowing a certain degree of stability while protecting free choice.

We cannot say that the Legislature's choice leads to absurd results or that the manifest purpose of the legislation was to prefer stability over democracy.

The ALRB asks the court to conclude that the Legislature did not intend that a one-year contract be subject to decertification during its term from the contents of a short transcript of a small part of the proceedings at a hearing before the Assembly Ways and Means Committee when the bill was under consideration by that body. The transcript was submitted to this court with the ALRB's preliminary opposition to support its contention. The ALRB also relies upon a declaration from Assemblyman Howard L. Berman, one of four authors of the ALRA, submitted to this court with the ALRB's return.

These references are of no help. First, they were submitted to this court for the first time and were not before the ALRB. ■ Secondly, while the declaration of a legislator is admissible as part of the legislative history for whatever help it may be in that regard (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371]) it is not admissible as to the individual legislator's motives and views. (See *In re Marriage of Bouquet, supra,* at pp. 589-590.) In any event, such a declaration is the weakest and most unreliable kind of indicator as to what the Legislature as a whole intended. Moreover, in this instance the additional evidence adds nothing. The transcript of the Assembly Ways and Means Committee hearing refers in a limited way to the maximum period of the contract bar as contained in section 1156.7, subdivision (b), as being three years and has no relevance to the minimum period during which a contract would bar a decertification petition. Assemblyman Berman's declaration is to the effect that he never had or heard any discussion that the contract bar would apply to a one-year contract. He does not say that the Legislature did not intend that the bar not apply to one-year contracts. Except by way of a double inference, such a negative statement lends no support to the proposition that the Legislature as a whole did not intend this result, especially since the result follows naturally from the statutory language used.

Finally, we turn to three procedural issues raised by one or more of the parties.

The petitioners urge that the ALRB exceeded its authority by accepting the UFW's appeal from the regional director's dismissal of UFW's motion to dismiss the decertification petition. Essentially the argument is that the ALRB has jurisdiction to review a regional director's decision directing an election only in postelection objection proceedings and that such proceedings can only begin once a tallying of the ballots is completed. Having decided the substantive issues in favor of petitioner, it is unnecessary to resolve the issue presented.

■ The ALRB argues that the employer, M. Caratan, Inc., has no standing to seek relief before this court because it has no beneficial interest in the proceeding in that the Legislature excluded employers from participating in the decertification process. While it is true that an employer can neither file a decertification petition nor vote in a decertification election, the employer is doing neither in this proceeding. The ALRB itself apparently recognized the employer's interest and standing in permitting the employer to participate as a party without objection.

This was a proceeding before the ALRB challenging the action of the ALRB in refusing to complete the election process, and in this court it is a challenge by way of ordinary mandamus (see Code Civ. Proc., §§ 1084-1086) to the ALRB's decision on that issue. An employer has a sufficient beneficial interest in the decertification process to seek review of the ALRB's decision. (Cf. *Bodinson Mfg. Co.* v. *California E. Com., supra,* 17 Cal.2d 321, 330-331; *Beverly Hills Fed. S. & L. Assn.* v. *Superior Court* (1968) 259 Cal.App.2d 306, 316-317, fn. 7 [66 Cal.Rptr. 183].) The employer has an interest in determining whether it will be subject to an unfair labor practice complaint should it refuse to bargain with the union and has many other obligations under the agreement which would be affected should the union be decertified. (See *United Farm Workers* v. *Superior Court* (1977) 72 Cal.App.3d 268 [140 Cal.Rptr. 87].)

The last procedural argument is made both by the UFW and the ALRB and is one which has arisen in other contexts. ■ It is contended that the review in this court is exclusively by way of the procedural provisions of section 1160.8[10] and that since the ALRB's decision is not a final order and it neither dismisses an unfair labor practice complaint nor directs a remedy for an unfair labor practice the

---

[10]Section 1160.8 provides:

"Any person aggrieved by the final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in the court of appeal having jurisdiction over the county wherein the unfair labor practice in question was alleged to have been engaged in, or wherein such person resides or transacts business, by filing in such court a written petition requesting that the order of the board be modified or set aside. Such petition shall be filed with the court within 30 days from the date of the issuance of the board's order. Upon the filing of such petition, the court shall cause notice to be served upon the board and thereupon shall have jurisdiction of the proceeding. The board shall file in the court the record of the proceeding, certified by the board within 10 days after the clerk's notice unless such time is extended by the court for good cause shown. The court shall have jurisdiction to grant to the board such temporary relief or restraining order it deems just and proper and in like manner to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part, the order of the board. The findings of the board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

"An order directing an election shall not be stayed pending review, but such order may be reviewed as provided in Section 1158.

"If the time for review of the board order has lapsed, and the person has not voluntarily complied with the board's order, the board may apply to the superior court in any county in which the unfair labor practice occurred or wherein such person resides or transacts business for enforcement of its order. If after hearing, the court determines that the order was issued pursuant to procedures established by the board and that the person refuses to comply with the order, the court shall enforce such order by writ of injunction or other proper process. The court shall not review the merits of the order."

petition for ordinary mandamus (see Code Civ. Proc., §§ 1084-1086)[11] is premature and cannot otherwise be entertained by this court.

It is true that the decision of the board is not a final order and is not directly reviewable under section 1160.8. (*United Farm Workers* v. *Superior Court* (1977) 72 Cal.App.3d 268 [140 Cal.Rptr. 87]; *Radovich* v. *Agricultural Labor Relations Bd.* (1977) 72 Cal.App.3d 36 [140 Cal.Rptr. 24]; *Nishikawa Farms, Inc.* v. *Mahony* (1977) 66 Cal.App.3d 781, 788 [136 Cal.Rptr. 233].) It is also settled that the court will not review ALRB orders which are not subject to the review procedure in section 1160.8 unless the order falls in one of several narrow exceptions. (*Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 556-557 [147 Cal.Rptr. 165, 580 P.2d 665].) Those exceptions were succinctly stated by the Supreme Court in *Belridge*: "Although recognizing a general immunity from judicial review of determinations other than final orders of the board, federal courts have exercised their equitable powers to review such determinations when the complaining party raises a colorable claim that the decision violates constitutional right [citations] or exceeds a specific grant of authority [citations]. *Refusal to issue a complaint based on an erroneous construction of an applicable statute also has been held reviewable under the court's general equitable power.* [Citation.]" (At pp. 556-557; italics added.) *Belridge* further held that these principles were applicable to review of ALRB orders. The genesis of the exception applicable here which is included within the foregoing quotation from *Belridge* is *Leedom* v. *Kyne* (1958) 358 U.S. 184 [3 L.Ed.2d 210, 79 S.Ct. 180]. In that case the NLRB conducted an election in a unit containing professional and nonprofessional employees without giving the professionals an opportunity to vote on whether they wished to be included with the nonprofessionals in one unit. In doing so the NLRB acted in violation of statute. The court held under those circumstances a petition for direct review was permissible.

Independent of and prior to *Belridge*, this court recognized the *Kyne* exception in *United Farm Workers* v. *Superior Court, supra,* 72

---

[11]Code of Civil Procedure section 1084 provides: "The writ of mandamus may be denominated a writ of mandate."

Code of Civil Procedure section 1085 provides in pertinent part: "It may be issued by any court . . . to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . ."

Code of Civil Procedure section 1086 provides: "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested."

Cal.App.3d 268. Quoting from *Boire* v. *Miami Herald Publishing Co.* (5th Cir. 1965) 343 F.2d 17, 21 (cert. den., 382 U.S. 824 [15 L.Ed.2d 70, 86 S.Ct. 56]), it was said: " '[I]t seems clear that, in light of the congressional purpose behind limited review of certification proceedings, representation matters are enjoinable only where the fact of a statutory violation cannot seriously be argued and where the deviation resulted in a deprivation of a "right" guaranteed by the Act.' [Citations.]" (At p. 274.) (See also *Templeton* v. *Dixie Color Printing Co.* (5th Cir. 1971) 444 F.2d 1064, 1068-1069 [18 A.L.R. Fed. 409].)

More recently the United States Court of Appeals for the District of Columbia in an opinion filed April 2, 1979 (*Physicians National House Staff Association* v. *Murphy* (D.C.Cir. Apr. 2, 1979) Docket No. 78-1209) held it had jurisdiction to review the NLRB's refusal to direct an election among a group of medical interns and residents. In doing so the court established the following criteria as falling within the *Leedom* v. *Kyne* exception: "To preserve the Wagner Act's judgment that judicial review of non-ULP orders can obstruct collective bargaining, we must balance the equitable purpose of the *Kyne* exception against the need to limit recourse to the judiciary. We agree with Professor Jaffe that the basis for court 'intervention' in such cases must be 'the type of gross transgression for which we invoke the label "jurisdictional" or "clear errors of law". . . .' The factors relevant to this determination are (A) whether the alleged error by the Board involved a question of statutory interpretation or merely an issue of fact; (B) whether the statutory provision is 'clear and mandatory' in creating rights for those subject to the NLRA; (C) whether the party challenging the Board's action has a realistic hope of eventual court review following an unfair labor practice order; and (D) the potential for thwarting the purposes of the NLRA which would flow from finding jurisdiction in this case." (Fns. omitted.) Applying these criteria to the issues in the case at bench, the conclusion is compelled that the exception applies in this case.

In the case at bench we have held that the petition for decertification was timely and that it met all the requirements of section 1156.7. Once those conditions are met, subdivision (c) of that section directs that "the board shall conduct an election," creating a mandatory duty to complete the election process. There is no factual dispute before the court regarding the sufficiency of the decertification petition. From this record it appears that the only reason the board refused to complete the election

process was its belief that the petition was untimely. We have held that the statute in this regard is clear on its face, requiring no interpretation, and that the board violated the express provisions thereof by refusing to complete the election process because of the timeliness issue.

Under the peculiar facts of this case, since the results of the election are unknown and cannot be known until the ballots are counted, the legal remedy is patently inadequate. To pursue the procedures under section 1160.8 would require that the employer refuse at its peril to bargain with the union at the conclusion of the one-year contract, an act which may or may not ultimately be an unfair labor practice, depending upon who wins the election, the results of which could remain uncertain indefinitely. This differs from the usual case where the ballots have been counted and the results of refusing to bargain are more clearly predictable. In this case if the employer won on the principal issue and the count went against decertification it would still be guilty of an unfair labor practice. It therefore introduces an element of blind uncertainty which in effect is equivalent to gambling on a throw of the dice. No litigant should be required to assume such a burden for lack of an expeditious remedy. For the employee to raise the issue in this court, he apparently would be required to resign from the union and thereupon be discharged from his employment for refusing to fulfill his obligations under the union contract. Again, the ultimate result of requiring such drastic action by the employee would depend upon a blind gamble. It also would result in an inordinate delay, extensive litigation and expense. The inadequacy of the remedy at law is manifest. Moreover, this court determined the inadequacy of the legal remedy when it issued the alternative writ. (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].)

Let a writ of mandamus issue directing the ALRB to set aside its order nullifying and dismissing the petition for decertification of the UFW and directing the ALRB to count the impounded ballots and otherwise proceed in accordance with law.

Franson, J., concurred.

**HOPPER, J.**—I respectfully dissent.

The Agricultural Labor Relations Board (hereinafter Board) by a three-to-two vote dismissed a decertification petition as untimely and

vacated the election. I agree with the result reached by the Board and substantially agree with the Board's reasoning.

First, this matter is not reviewable at this time. The matter is not appropriate for threshold judicial review. It is not a final order. (See *United Farm Workers* v. *Superior Court* (1977) 72 Cal.App.3d 268 [140 Cal.Rptr. 87]; *Radovich* v. *Agricultural Labor Relations Bd.* (1977) 72 Cal.App.3d 36 [140 Cal.Rptr. 24].) A nonfinal order is reviewable only under limited circumstances which are not applicable here (see *Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 558 [147 Cal.Rptr. 165, 580 P.2d 665]).

Petitioners contend that the exception set forth in *Leedom* v. *Kyne* (1958) 358 U.S. 184 [3 L.Ed.2d 210, 79 S.Ct. 180] is applicable to this case. *Kyne* permits judicial review of orders not coming within Labor Code section 1160.8 " 'only where the fact of a statutory violation cannot seriously be argued and where the deviation resulted in a deprivation of a "right" guaranteed by the Act.' " (*United Farm Workers* v. *Superior Court, supra,* at p. 274.) The *Kyne* exception should only be used in extraordinary circumstances. (See *Boire* v. *Greyhound Corporation* (1964) 376 U.S. 473, 479 [11 L.Ed.2d 849, 853-854, 84 S.Ct. 894].) "The *Kyne* exception is a narrow one, not to be extended to permit plenary District Court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law." (*Boire* v. *Greyhound Corporation, supra,* 376 U.S. 473, 481 [11 L.Ed.2d 849, 855].) *Kyne* itself pointed out that it is to be used only when an order is "made in excess of its delegated powers and contrary to a *specific prohibition in the Act*" (*Kyne,* 358 U.S. 184, 188 [3 L.Ed.2d 210, 214]); in *Kyne* the Board conceded in the court of appeals that it "had acted in excess of its powers and had thereby worked injury to the statutory rights of the professional employees" (358 U.S. at p. 187 [3 L.Ed.2d at p. 213]). The *Kyne* exception in some respects is analogous to the rule requiring exhaustion of administrative remedies "in cases in which the Court has granted relief on the ground that the agency has acted in violation of its statute, the action has been so extreme as to be characterized as 'lawless' or 'a clear departure from [a] statutory mandate.' " (5 Mezines et al. (1978) Administrative Law, § 49.02(3), p. 49-26.) For two cases where there was a violation of a clear statutory requirement (although *Kyne* was not discussed but its principle applied) see the preinduction review cases of *Breen* v. *Selective Service Board* (1970) 396 U.S. 460 [24 L.Ed.2d 653, 90 S.Ct. 661] and *Oestereich* v. *Selective Service Bd.* (1968) 393 U.S. 233

[21 L.Ed.2d 402, 89 S.Ct. 414]. In order for *Kyne* to apply, the action of the Board must be *patently without legality* (*Eastern Greyhound Lines* v. *Fusco* (6th Cir. 1962) 310 F.2d 632, 635) and the Board must have disregarded a *specific and unambiguous statutory directive* (*Squillacote* v. *Int'l Broth. of Teamsters* (7th Cir. 1977) 561 F.2d 31 (a case in which a union unsuccessfully tried to use the *Kyne* exception)). The *Kyne* exception, in short, is limited to instances where the Board's determination is so patently invalid there could be no reasonable difference of opinion. That is *not* the instant case. Labor Code section 1156.7, subdivision (c), is not clear and unambiguous on its face.

Even if the statute at issue were clear on its face and were interpreted as done by the majority in the instant case, the disputed terms only define when a decertification will be "timely." Petitioners contend that the express terms of section 1156.7 leave no discretion in the Board once a petition has been filed. Petitioners base this contention on the language in the first paragraph of subdivision (c) that the "Board shall conduct an election." Petitioners argue that the "shall" language creates a mandatory duty on the part of the Board to complete the election procedure. However, arguably, the mandatory language "shall" in subdivision (c) may be construed as not being absolute on its face. In *Radovich* v. *Agricultural Labor Relations Bd., supra,* 72 Cal.App.3d 36, 43-46, this court held that similar mandatory language in a related provision in the Agricultural Labor Relations Act "apparently absolute" on its face did not remove from the Board the discretion to determine whether a petition was sufficient to compel the Board to act on it. Furthermore, Labor Code section 1142, subdivision (b), and California Administrative Code, title 8, section 20360, subdivision (c), construed together, vest discretion in the Board to review the sufficiency of the decertification petition. Therefore, it could be argued that the statute requiring an election to be held if the decertification petition is timely filed is not absolute on its face. The action of the Board in refusing to proceed to count the ballots does not necessarily constitute statutory violation except upon consideration of whether it properly exercised its discretionary powers.

Second, Labor Code section 1156.7, subdivision (c), can, and should be, reasonably interpreted in a different manner than done by the majority. In my opinion section 1156.7 should be properly and logically construed considering the purposes and intent of the Agricultural Labor Relations Act to prohibit decertification elections within the first year of any collective bargaining agreement. The majority purports to utilize the well-recognized method of statutory interpretation known as the plain

meaning rule. In this regard we should remember that in statutory interpretation there are generally two opposing canons on almost every point and for every thrust there is a parry. (See Llewellyn, The Common Law Tradition (1960) Appen. C, 521-535, for an extended discussion; see also Code Civ. Proc., §§ 4, 1858, 1859; Civ. Code, §§ 13, 3541, 3542; and 45 Cal.Jur.2d (1958) Statutes, § 99, p. 613.) As Llewellyn points out, *supra,* at page 521, "Plainly to make any canon take hold in a particular instance, the construction contended for must be sold, essentially, by means other than the use of the canon: the good sense of the situation and a *simple* construction of the available language to achieve that sense, *by tenable means, out of the statutory language."* (Italics in original.)

There are a myriad of aids in statutory construction which may be usable in a given case. "[W]here uncertainty exists consideration may be given to the consequences that flow from a particular interpretation." (*Jaynes* v. *Stockton* (1961) 193 Cal.App.2d 47, 56 [14 Cal.Rptr. 49]; *Big Sur Properties* v. *Mott* (1976) 62 Cal.App.3d 99, 105 [132 Cal.Rptr. 835]; see also *Estate of Ryan* (1943) 21 Cal.2d 498, 512-513 [133 P.2d 626].) A statute should be interpreted with reference to the whole system of law of which it is a part. (*People* v. *Comingore* (1977) 20 Cal.3d 142, 147 [141 Cal.Rptr. 542, 570 P.2d 723]; see also extensive citations listed in *Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 785 [138 Cal.Rptr. 378].) Canons of construction cannot save us from the anguish of judgment. (See Frankfurter, *Some Reflections On the Reading of Statutes* (1947) 47 Colum. L.Rev. 527.) "The meaning of a sentence is to be felt rather than to be proved." (*United States* v. *Johnson* (1911) 221 U.S. 488, 496 [55 L.Ed. 823, 826, 31 S.Ct. 627].) The final rendering of the meaning of a statute, thus, becomes an act of judgment. Statutory construction implies the exercise of choice precluding the notion of capricious choice as much as choice based on private notions of a policy which, of course, should be left to the legislative branch. "[T]he primary rule of statutory construction, to which every other rule as to interpretation of particular terms must yield, is that the intention of the Legislature must be ascertained if possible, and, when once ascertained, will be given effect, even though it may not be consistent with the strict letter of the statute." (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324].) We should try to give effect to the manifest purposes which appear in the provisions of the statute considered as a whole. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849 [59 Cal.Rptr. 609, 428 P.2d 593].) We should give the statute an interpretation that will promote rather than defeat the general purpose and policy of the statute. (*City of L.A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256 [330 P.2d 888].) Where a

statute is susceptible of two constructions, the one that leads to the more reasonable result will be followed. (45 Cal.Jur.2d, *supra,* § 116, p. 625.) The words of the statute are often flexible enough to admit of some other construction which should be adopted to effectuate the intention of the statute rather than to defeat it. (See *In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883].) Attempting to apply these various approaches to the instant case, and fully cognizant of the fact that there is no table of logarithms for statutory construction, I turn to the statute in question. The second paragraph of Labor Code section 1156.7, subdivision (c), provides: "However, such a petition shall not be deemed timely unless it is filed during the year preceding the expiration of a collective-bargaining agreement *which would otherwise bar the holding of an election,* and when the number of agricultural employees is not less than 50 percent of the employer's peak agricultural employment for the current calendar year." (Italics added.)

I conclude that a reasonable construction of the clause emphasized above is that that clause simply modifies the words "collective bargaining agreement" and was intended to refer only to collective bargaining agreements which under Labor Code section 1156.7, subdivision (b), barred an election, i.e., three-year contracts. Such a conclusion makes sense in light of the legislative intent to promote stability in labor relations. The majority conclusion would result (assuming other statutory requirements are met) in the possibility of decertification taking place within the very first year of a contract. If decertification is successful, the contract itself may possibly be set aside at any time. (See Levy, *The Agricultural Labor Relations Act of 1975—La Esperanza De California Para El Futuro,* 15 Santa Clara Law. 783, 800, fn. 106, 2d par.)

I cannot conclude, particularly in light of the violence preceding the legislation and the considerable hearings which were conducted, that the Legislature intended such an unstable condition to exist during the first year of a collective bargaining agreement. Such a construction would raise the possibility of periodic elections and a potentially continuous struggle in such period similar to the chaotic conditions existing in some European countries on election of a Prime Minister. While I concede that the majority position is arguable as set forth in footnote 7 of the majority opinion, I am unable to agree that it is so obvious what the Legislature had in mind in using the "otherwise bar" language. Nor do I agree that the interpretation of the majority is compelled. I submit that the interpretation set forth in this dissenting opinion leads to the more reasonable result.

I believe that the Legislature intended to give some breathing room to the parties to a collective bargaining agreement to the end that repeated elections would not be taking place in the early part of such an agreement. I agree with the Board's conclusion that while the "various bars to an election serve different purposes, the central theme of such rules is that employees should be bound by their choice of a bargaining agent for a period of time sufficient to allow the bargaining relationship to develop and mature in order to attain the stability which is an objective of the statute." Such a bar eliminates the pressure on parties in negotiation to produce a hot-house result. (See *Brooks* v. *Labor Board* (1954) 348 U.S. 96 [99 L.Ed. 125, 75 S.Ct. 176, 42 A.L.R.2d 1405] (a certification bar case).) Permitting a decertification election to take place in the early days of a collective bargaining agreement eliminates a major inducement to both the employers and employees to sign a collective bargaining agreement since the major benefit of such an agreement is the stability that results from having the conditions of employment fixed for a definite period of time. Of course, the Legislature could have been more specific. Undoubtedly the Legislature should give consideration toward appropriate amendments to the act in several places. That, however, is a legislative matter and not our concern. I agree completely with the majority that the wisdom of the legislation is not for us to consider. However, the state policy has been expressly stated by the Legislature in Labor Code section 1140.2 which reads, in full, as follows: "It is hereby stated to be the policy of the State of California to encourage and protect the right of agricultural employees to full freedom of association, self-organization, and designation of representatives of their own choosing, to negotiate the terms and conditions of their employment, and to be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. *For this purpose this part is adopted to provide for collective-bargaining rights for agricultural employees.*" (Italics added.)

The hope of the Legislature was to eradicate the plague caused by constant turmoil threatening agriculture in this state. The Legislature recognized that, as a practical matter, the only way to hopefully solve the problem was through the mechanism of collective bargaining agreements. To adopt the interpretation urged by petitioners in this case would mean both employers and employees would be discouraged from entering into one-year contracts as a means of resolving their differences. Employees are entitled to change or reject their representatives if they desire, but

only at reasonable intervals. Even in the governmental process at the local level there are limitations on recall of representatives so that an opportunity can be given for the electorate to evaluate the performance of their particular representative. It would be very difficult for agricultural workers to evaluate the performance of their representatives if a petition for decertification could be filed (other statutory prerequisites having been met) at any time after a collective bargaining agreement had been signed. Furthermore, Labor Code section 1156.7 does not mention one-year collective bargaining agreements, although three-year agreements are inferentially mentioned. (See Lab. Code, § 1156.7, subd. (b).) From this omission alone it could be inferred that the inclusion of three-year agreements necessarily excludes agreements for less than three years.

Additionally, applying section 1156.7, subdivision (c), to one-year collective bargaining agreements would arguably bring the section into conflict with sections 1156.5 and 1156.6. Those sections give a union a 12-month period after being elected as the collective bargaining unit's representative and 12 months after being so certified in which the Board may direct any elections. If section 1156.7, subdivision (c), is applicable to one-year collective bargaining agreements, it certainly is not clear what would happen if a collective bargaining agreement of that length is entered into immediately after a collective bargaining unit's representative is elected or certified. At the very least, it is not clear whether section 1156.7 applies to one-year collective bargaining agreements.

Furthermore, when the majority concludes that the statute is plain on its face and therefore needs no interpretation, they have already engaged in a type of interpretation and concluded that, as so interpreted, the statute needs no further interpretation. (See Radin, *Statutory Interpretation* (1930) 43 Harv.L.Rev. 863, 868-869.) This type of reasoning is similar to saying "[c]lear statutory language no more needs to be interpreted than pure water needs to be strained" (*Holder* v. *Superior Court* (1969) 269 Cal.App.2d 314, 317 [74 Cal.Rptr. 853]). At first blush that statement sounds very logical and accurate. However, it is predicated upon the water being pure, which itself resolves the very matter in question.

Third, it is interesting to note that the minority on the Board seriously questioned the adequacy of the record in the instant case being used to establish a general rule to be applied in all cases. The Board minority pointed out that the record should have included the percentage of employees who actually voted, the degree of turnover since the initial election, and the degree of employer involvement in the campaign.

Fourth, for a writ of mandate to issue, two basic requirements are essential, namely, a clear, present (and usually ministerial) duty on the part of the Board and a clear, present and beneficial right in petitioner to performance of that duty. (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 61, p. 3838; Frank, Cal. Civil Writs (Cont.Ed. Bar 1970) §§ 5.17-5.23, pp. 72-77.) I am not so certain that petitioners, or any of them, have established a *clear, present and beneficial right* to performance of a duty sought to be ordered in this case. Neither petitioner is in any danger of violation of the Agricultural Labor Relations Act by reason of an unfair labor practice insofar as the present matter is concerned. The obligations of the employer remain unaffected at the present time, as do those of the petitioner employee. Those obligations and rights continue to be unaffected so long as decertification in fact has not taken place. There is no more uncertainty or blind gamble involved in this situation than exists in the usual situation involving any nonfinal order. To reiterate, the statutory scheme has in mind non-interference by the judiciary with the sort of representation problem presented here until, if ever, Labor Code section 1160.8 comes into play. Until then, we should, with proper deference to the Legislature, adopt a hands-off policy.

While I do not suggest, in the manner of a Chicken Little, that the sky will fall if we issue the writ in this case, I submit that the thread of the garment which the Legislature has pieced together, hopefully to bring peace and stability to the fields, is as fragile as the thread of Ariadne given to Theseus to aid him out of the Labyrinth. In these trying times when violence and claims of violence are daily encountered and the atmosphere is filled with emotion, I would interpret the statute to keep that garment whole and not weaken it by snipping at the thread.

I would deny the writ.

A petition for a rehearing was denied May 15, 1979. Hopper J., was of the opinion that the petition should be granted. The petitions of the respondent and the real party in interest for a hearing by the Supreme Court were denied July 27, 1979. Bird, C. J., did not participate therein. Tobriner, J., and Newman, J., were of the opinion that the petitions should be granted.