Filed 10/15/15  P. v. Higginbotham CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES HIGGINBOTHAM,<br><br>    Defendant and Appellant. | D065536<br><br>(Super. Ct. No. SCE180353) |

APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge.  Affirmed.

Mazur & Mazur and Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Susan Miller and Stacy A. Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

I.

INTRODUCTION

James Higginbotham appeals from a March 4, 2014 order denying his petition for recall of sentence pursuant to the Three Strikes Reform Act of 2012 (Pen. Code, § 1170.126) ("the Act").[1] On appeal, Higginbotham contends that the trial court abused its discretion in determining that he is not eligible for resentencing because he poses "an unreasonable risk of danger to public safety." (*Id*., subd. (f).) Higginbotham also claims that the trial court abused its discretion in failing to grant defense counsel's request to continue the hearing on his petition for recall of sentence. Finally, Higginbotham claims that the trial court's order must be reversed and the matter remanded to the trial court with directions to reconsider the petition under the revised definition of "unreasonable risk of danger to public safety" contained in section 1170.18, subdivision (c).[2] We affirm the trial court's order denying the petition.[3]

---

[1] Unless otherwise specified, all subsequent references are to the Penal Code.

[2] Section 1170.18, subdivision (c) was added to the Penal Code several months after the March 2014 denial of Higginbotham's petition, through the electorate's November 2014 adoption of Proposition 47.

[3] Higginbotham also filed a petition for habeas corpus (*In re Higginbotham*, D068335) that we summarily deny by way of a separate order filed today.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The commitment offense*

In 1997, a jury found Higginbotham guilty of inflicting corporal injury upon a spouse or roommate (§ 273.5). At sentencing, the court found that Higginbotham had suffered two prior serious or violent felony convictions (§§ 667, subds. (b)-(i), 1170.12), and one prison prior (§ 667.5, subd. (b)), and sentenced him to an indeterminate term of 26 years to life in prison pursuant to the Three Strikes law (§§ 667, 1170.12).

B.    *Higginbotham's petition for recall of sentence*

Higginbotham filed a petition for recall of sentence in October 2013. In his brief in support of his petition, Higginbotham acknowledged that he suffered two prior strike convictions in 1991 based on a robbery (§ 211) and a burglary (§ 459), and that he had been incarcerated for 16 years for the commitment offense.

Higginbotham contended that he no longer poses an unreasonable risk of danger to public safety for various reasons. With respect to the commitment offense, Higginbotham acknowledged that he "and his girlfriend engaged in a physical confrontation culminating in his dragging her out of his house by her feet." However, he maintained that they had been drinking heavily prior to the incident, and that his girlfriend had given "conflicting versions" of the incident to authorities. Higginbotham also noted that, if he were to commit the same offense today, the maximum sentence that he could receive would be eight years in prison.

3

Higginbotham also maintained that his criminal history was "mitigating" in that both of the strike convictions that he suffered were based on crimes committed during a single year, when he was a "young man," and that he was "very different" now.

With respect to his record of rehabilitation, Higginbotham acknowledged that his conduct while incarcerated had been "sporadic at best," and that he has suffered many serious rules violations while in prison. However, Higginbotham claimed that since 2011, he has been an "above average inmate." Higginbotham also noted that he has obtained his GED and completed several college courses while incarcerated, has realistic employment prospects, and has an abundance of family and social support.

Higginbotham supported his petition with various documents, including copies of certificates demonstrating his completion of various educational programs while in prison, and numerous letters from family members and friends attesting to his reformed character.

C.    *The People's opposition*

The People filed an opposition to Higginbotham's petition. The People argued that Higginbotham has a significant criminal history, including six criminal convictions, and that several of the convictions indicate that he is capable of "committing serious violence." In support of this contention, the People summarized the facts of the commitment offense as detailed in the probation report prepared in the case.[4] The People

---

4    We deny the People's request that we take judicial notice of our opinion on Higginbotham's direct appeal. The People did not request that the trial court take judicial

4

noted that the offense occurred after the victim (Higginbotham's live-in girlfriend) had drunk alcohol to excess and broken a toilet, causing it to leak water onto the floor. According to the People, Higginbotham became enraged upon seeing the mess. He kicked the victim in the face, and then dragged her by her ankles through the apartment and down an asphalt driveway, to the curb. Higginbotham then repeatedly kicked the victim in the face. Police found the victim unconscious on the ground.

The People also noted that Higginbotham has an extensive record of prison rule violations, including 12 serious rule violations. Among the most serious violations are violations for attempted murders in 2003 and 2006, each of which involved Higginbotham's stabbing a victim with an inmate-manufactured weapon. The People also noted that Higginbotham has suffered numerous additional rules violations including possession of an inmate-manufactured weapon, battery on an inmate, and fighting.

The People supported their opposition with copies of the probation report from Higginbotham's commitment offense, a 1998 statement issued by the district attorney pursuant to section 1203.01[5] stating that Higginbotham "should never be allowed to walk

_____

notice of the opinion, it is not clear whether the trial court considered the opinion in ruling on Higginbotham's petition, the opinion is not necessary to our resolution of the appeal, and the People present no unusual circumstance that would support taking judicial notice of the opinion. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2 [" 'Reviewing courts generally do not take judicial notice of evidence not presented to the trial court' absent unusual circumstances"].)

[5] Section 1203.01, subdivision (a)(1) authorizes a district attorney to file a statement "respecting the person convicted or sentenced and the crime committed, together with

the streets of any community as a free man," copies of Higginbotham's prison disciplinary reports, and two 1997 parole reports detailing the commitment offense and Higginbotham's prior parole history.

D.    *Higginbotham's supplemental filings in support of his petition*

In March 2014, Higginbotham filed two additional letters of support and a psychological report prepared by Dr. Raymond Murphy.  In his report, Dr. Murphy stated that Higginbotham had above average intellectual abilities and that he suffered from no major psychological deficits.  Dr. Murphy acknowledged that Higginbotham's "aggression and violence profile . . . certainly suggests that he is potentially likely to act out in an aggressive or violent fashion," and also noted that Higginbotham had a "relatively marked" substance abuse history.  However, Dr. Murphy stated that Higginbotham's "current profile does not present as aggressive, assaultive or predatory," and that his "history of drug abuse is in the distant past."[6]

E.    *The trial court's ruling*

The trial court held a hearing on Higginbotham's petition on March 4, 2014.  After hearing argument from the People and defense counsel as well as a personal statement

---

any reports the probation officer may have filed relative to the prisoner," which is to be sent to the Department of Corrections and Rehabilitation.

[6]    Along with his psychological report, Higginbotham filed two newspaper articles detailing the gruesome crimes committed by the victim of Higginbotham's 2006 attempted murder.  At the hearing on the petition, defense counsel contended that Higginbotham had stabbed the victim, his cellmate, in self-defense.  In addition, Higginbotham filed a short statement detailing his good behavior while in local jail awaiting resolution of his petition, and two additional letters of support.

from Higginbotham, the trial court issued its ruling. The court stated that although Higginbotham's criminal record was not particularly aggravated, the circumstances of the commitment offense were "atrocious." The court also commented that Higginbotham had "the worst record that [the court] [had] ever seen" among prisoners seeking resentencing under the Act. Ultimately, the court denied the petition, ruling:

> "On this record with this criminal background with this commitment offense, but most importantly, with the series of violent offenses, which are well documented in the prison record, culminating in the 2003 [and] 2006 participations in what can only be characterized as attempted murders, I find that resentencing this petitioner at this time would pose an unreasonable risk of danger to public safety. His petition is denied."

F.    *Higginbotham's appeal*

Higginbotham timely appeals the trial court's March 4, 2014 order denying his petition.[7]

## III.

## DISCUSSION

A.    *The trial court did not abuse its discretion in denying Higginbotham's petition for recall of sentence*

Higginbotham claims that the trial court erred in denying his petition for recall of sentence.

---

[7]    The order is appealable. (See *Teal v. Superior Court* (2014) 60 Cal.4th 595, 596 [concluding order denying petition for recall of sentence under the Act is appealable].)

1.      *Governing law and standard of review*

The electorate passed Proposition 36, the Three Strikes Reform Act of 2012 (the Act), in November 2012.  The Act changes the requirements for sentencing a third strike offender.  (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167 (*Yearwood*).)  Under the former version of the Three Strikes law, an individual with two or more prior strikes who is convicted of any new felony may be sentenced to an indeterminate life sentence.  (*Ibid.*)  Under the new version, a life sentence for a third strike offender is reserved for cases in which the new felony is also serious or violent, or the prosecution has pled and proved an enumerated disqualifying factor.  (*Id*. at pp. 167-168.)  In all other cases, a third strike offender is to be sentenced as a second strike offender.  (*Id*. at p. 168.)

The Act also created a procedure permitting the resentencing of "persons presently serving an indeterminate term of imprisonment [under the Three Strikes law], whose sentence under this act would not have been an indeterminate life sentence" under certain enumerated circumstances.  (§ 1170.126, subd. (a).)  In *Yearwood,* the court summarized this resentencing procedure as follows:

> "To obtain a sentencing reduction pursuant to section 1170.126, the prisoner must file a petition for a recall of sentence in the trial court. 'Any person serving an indeterminate term of life imprisonment imposed pursuant to' the three strikes law may file a petition for a recall of his or her sentence within two years after the Act's effective date 'or at a later date upon a showing of good cause.' (§ 1170.126, subd. (b), hereafter 1170.126(b).)  Upon receipt of such a petition, the trial court must determine if it satisfies the criteria contained in subdivision (e) of section 1170.126. (§ 1170.126, subd. (f).)  If it does, the prisoner shall be resentenced as a second strike offender *'unless the court, in its discretion, determines that resentencing the*

8

*petitioner would pose an unreasonable risk of danger to public safety*.' (§ 1170.126, subd. (f).) In exercising this discretion the trial court may consider the prisoner's criminal history, disciplinary record and record of rehabilitation while incarcerated and any other relevant evidence. (§ 1170.126, subd. (g).)" (*Yearwood, supra,* 213 Cal.App.4th at pp. 170-171, italics added.)

Because the statute expressly vests discretionary power in the trial court (§ 1170.126, subd. (f) [requiring resentencing unless "in its discretion" the court determines the resentencing would pose an unreasonable risk of danger to public safety]), we are governed by the deferential abuse of discretion standard of review.

"Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125, italics omitted.)

2.    *Application*

Higginbotham contends that the trial court erred in failing to apply the "strong presumption" in favor of resentencing under the Act. Regardless of whether section 1170.126 establishes a "strong presumption" in favor of resentencing, the statute expressly provides that a trial court is to deny resentencing if the court determines that "resentencing the petitioner would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)). It is clear that the trial court did not abuse its discretion in determining that Higginbotham poses such a risk.

9

To begin with, the trial court noted that the circumstances of the commitment offense were "atrocious." Higginbotham contends that the trial court erred by relying on "unproved allegations" concerning the commitment offense. However, section 1170.126, subdivision (g) provides that the court may consider "any . . . evidence" the court deems relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety. The trial court's recitation of the facts of the commitment offense was consistent with that contained in the probation report, and the court was clearly authorized to consider the probation report in determining whether to resentence Higginbotham.

Higginbotham also claims that the trial court failed to consider "relevant and compelling mitigating circumstances" related to his conduct in prison. In support of this contention, Higginbotham denies that he committed the 2003 attempted murder and claims that he acted in self-defense in stabbing his cellmate in 2006. The trial court did not abuse its discretion in relying on findings by prison authorities that Higginbotham committed the attempted murders. Further, the attempted murders constituted only two of the 12 serious rules violations that Higginbotham committed while incarcerated, including possessing a weapon as recently as 2011.

While we acknowledge that Higginbotham has achieved considerable educational success in prison, appears to have made progress on his substance abuse problem, has improved his prison disciplinary record in recent years, and has considerable social support, as the trial court also observed, Higginbotham has an extensive and extremely

10

serious prison disciplinary record. Higginbotham's criminal history and prison disciplinary record demonstrate that he has engaged in numerous acts of violence, and that he has a significant substance abuse problem. In addition, while Higginbotham contends that he received a "very positive" psychological evaluation, he minimizes the risks related to his prior history of violence and substance abuse noted in the evaluation.

Under these circumstances, it is clear that the trial court did not act in an " 'arbitrary, capricious or patently absurd manner' " (*People v. Rodrigues, supra,* 8 Cal.4th at p. 1125) in determining that resentencing Higginbotham would pose an "unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)), and in denying his petition for recall of sentence on that basis.

B.     *The trial court did not abuse its discretion in failing to continue the hearing on Higginbotham's petition for recall of sentence in order to permit Higginbotham more time to demonstrate good behavior in prison*

Higginbotham claims that the trial court erred in failing to grant defense counsel's request that the hearing on Higginbotham's petition for recall of sentence be continued for a year in order to permit Higginbotham more time to demonstrate good behavior in prison.

1.     *Factual and procedural background*

During the hearing on Higginbotham's petition, defense counsel presented an extensive oral argument in support of the petition. Defense counsel acknowledged that Higginbotham had several prison rules violations, but argued that Higginbotham had

11

changed his ways, particularly after 2011. At the conclusion of this argument, defense counsel stated the following:

> "We'd also make a suggestion to the court, if the court feels that maybe at this time Mr. Higginbotham, because his . . . change . . . is fairly recent, perhaps we should continue Mr. Higginbotham's case maybe for a year. See what he does. See if he truly means to become the person that he said he's willing to be, and perhaps show to the court that he can and is a different person."

Without obtaining a response to her suggestion, defense counsel proceeded to ask the court whether Higginbotham could present a personal statement to the court. The court permitted Higginbotham to present the statement. Thereafter, without expressly ruling on defense counsel's "suggestion" concerning continuing the case, the trial court denied the petition.

2.      *Governing law and standard of review*

In *People v. Fuiava* (2012) 53 Cal.4th 622, 650, the Supreme Court outlined the law governing a trial court's ruling on a party's request for a continuance, and appellate review of such a ruling:

> " '[T]he decision whether or not to grant a continuance of a matter rests within the sound discretion of the trial court. [Citations.] The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked. [Citation.] [¶] Under this state law standard, discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered. [Citations.] Moreover, the denial of a continuance may be so arbitrary as to deny due process. [Citation.] However, not every denial of a request for more time can be said to violate due process, even if the party seeking the continuance thereby fails to offer evidence. [Citation.]' [Citation.] '[T]he trial court may not exercise

12

its discretion "so as to deprive the defendant or his attorney of a reasonable opportunity to prepare." ' "

" 'Absent a showing of an abuse of discretion and prejudice, the trial court's denial [of a request for a continuance] does not warrant reversal.' " (*People v. Leavel* (2012) 203 Cal.App.4th 823, 830.)

3. *Application*

Defense counsel's "suggestion" that the matter be continued was equivocal at best, and, most reasonably interpreted, did not amount to a formal request for a continuance. To the extent that defense counsel intended for her "suggestion" to constitute a request to continue the hearing, counsel forfeited that request by failing to obtain a ruling on the request. (See *People v. Memory* (2010) 182 Cal.App.4th 835, 857 ["a party will forfeit a claim by failure to obtain a ruling"].) In any event, the trial court could have reasonably determined that continuing the matter for a year to allow Higginbotham more time to demonstrate that he was committed to behaving in prison was not warranted under all of the circumstances of the case.

Accordingly, we conclude that the trial court did not abuse its discretion in failing to continue the hearing.

C. *Proposition 47's definition of "unreasonable risk of danger to public safety" does not apply retroactively*

Higginbotham contends that the matter must be remanded to the trial court with directions to consider his petition pursuant to the definition of "unreasonable risk of danger to public safety" contained in section 1170.18, subdivision (c), which was enacted

13

by the electorate in November 2014 through the passage of Proposition 47.[8]  The People

contend that Proposition 47's definition of "unreasonable risk of danger to public safety"

(§ 1170.18, subd. (c)) does not apply to petitions for recall of sentence under the Act, and

in any event, does not apply retroactively to Higginbotham's case.[9]

We agree that even if Proposition 47's definition of "unreasonable risk of danger to

public safety" codified in section 1170.18, subdivision (c) applies to petitions for recall of

sentence under the Act decided after the adoption of Proposition 47, it does not apply

retroactively to Higginbotham's case.[10]

1.      *Governing law and standard of review*

a.      *The Act*

As noted previously (see pt. III.A.1., *ante*), the electorate passed Proposition 36,

which enacted the Act, in November 2012.  The Act provides that certain prisoners

currently serving a life sentence pursuant to the Three Strikes law shall be resentenced as

---

[8]      The issue of whether the definition of "unreasonable risk of danger to public safety" in section 1170.18, subdivision (c) applies to petitions for recall of sentence under the Act is currently pending before the Supreme Court.  (See *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Feb. 18, 2015, S223825.)

[9]      The issue of whether the definition of "unreasonable risk of danger to public safety" in section 1170.18, subdivision (c) applies retroactively is also currently pending before the Supreme Court.  (See *People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted Feb. 18, 2015, S223676.)

[10]      In light of our conclusion we need not, and do not, decide whether Proposition 47's definition of "unreasonable risk of danger to public safety" codified in section 1170.18, subdivision (c), applies to petitions for recall of sentence under the Act decided after the adoption of Proposition 47.

second strike offenders unless a trial court determines that resentencing the prisoner would pose an "unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)

b.    *Proposition 47*

In November 2014, the voters passed Proposition 47.  Among numerous other provisions, Proposition 47 designated certain felony drug and theft crimes as misdemeanors.  (See, e.g., Health & Saf. Code, § 11377 [making possession of certain controlled substances a misdemeanor], § 459.5, subd. (a) [establishing the misdemeanor of shoplifting].)  Proposition 47 also created a new resentencing provision, section 1170.18, under which "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence" and request resentencing.  (§ 1170.18, subd. (a).)  Section 1170.18, subdivision (b) provides in relevant part: "If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose *an unreasonable risk of danger to public safety*."  (Italics added.)

Unlike the Act, Proposition 47 provides a definition of unreasonable risk of danger to public safety.  Section 1170.18, subdivision (c) provides:

> "*As used throughout this Code*, 'unreasonable risk of danger to
> public safety' means an unreasonable risk that the petitioner will
> commit a new violent felony within the meaning of clause (iv) of

15

subparagraph (C) of paragraph (2) of subdivision (e) of Section 667.' " (Italics added.)

Section 667, subdivision (e)(2)(C)(iv) lists a series of particularly heinous offenses that are sometimes referred to as " 'super strike' offenses" (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108-1109), including sexually violent offenses and all homicide offenses.[11]

---

[11] Section 667, subdivision (e)(2)(C)(iv) lists the following offenses:

"(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

"(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

"(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

"(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

"(V) Solicitation to commit murder as defined in Section 653f.

"(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

"(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

16

c.    *Applicable law governing the determination of whether an initiative is to be applied retroactively*

"No part of [the Penal Code] is retroactive, unless expressly so declared."  (§ 3.)

Section 3 codifies " 'the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.' "  (*People v. Brown* (2012) 54 Cal.4th 314, 319.)  " ' "[A] statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective." ' "  (*Id*. at p. 320.)

"Measures adopted by the voters through the initiative process . . . are subject to the ordinary rules and canons of statutory construction."  (*Hermosa Beach Stop Oil Coalition v. City of Hermosa Beach* (2001) 86 Cal.App.4th 534, 549.)  Whether an initiative is to be applied retroactively is a question of law reviewed de novo on appeal.  (See *id*. at p. 548.)

2.    *Application*

Proposition 47 is silent as to whether it applies retroactively to proceedings under the Act.  Higginbotham indentifies no extrinsic sources suggesting that the definition of "unreasonable risk of danger to public safety" contained in section 1170.18, subdivision (c) is to be applied to a petition for recall of sentence under the Act decided prior to the enactment of Proposition 47.  Further, as the People observe in their brief, it is unreasonable to conclude that the voters who adopted Proposition 47 intended for the

17

State to bear the considerable expense that would be incurred by requiring trial courts to reconsider petitions filed pursuant to the Act and decided prior to the adoption of Proposition 47 pursuant to Proposition 47's new definition of unreasonable risk of danger to public safety.

Without addressing section 3's presumption against retroactive application of any portion of the Penal Code, Higginbotham presents numerous arguments in favor of retroactivity. None is persuasive. First, Higginbotham cites cases pertaining to statutes repealing a common law right (see, e.g., *Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 489), but Proposition 47 did not repeal a common law right.

Higginbotham also cites case law providing that a statute that clarifies the law may be applied to transactions that occurred prior to the enactment of the statute (see, e.g., *Negrette v. California State Lottery Com.* (1994) 21 Cal.App.4th 1739, 1744) in support of his contention that the definition of "unreasonable risk of danger to public safety" set forth in Proposition 47, and specifically, the limitation of the definition to those defendants who pose an unreasonable risk of committing a super strike, clarifies the meaning of the phrase as used in the Act.

The clarification doctrine is premised on the principle that "[a] statute that merely *clarifies,* rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment" "because the true meaning of the statute remains the same." (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471-472.) "[P]articularly when there is no definitive 'clarifying' expression by the

18

Legislature in the amendments themselves, we will presume that a substantial or material statutory change . . . bespeaks legislative intention to change, and not just clarify, the law."  (*Fonseca v. City of Gilroy* (2007) 148 Cal.App.4th 1174, 1197 (*Fonseca*).)

Higginbotham has not identified anything in the text of Proposition 47 or in any extrinsic source suggesting that the voters intended the definition of "unreasonable risk of danger to public safety" contained in Proposition 47 to constitute a clarification of the phrase in the Act.  Further, the Proposition 47 definition is not "declarative of existing law" (*Fonseca, supra,* 148 Cal.App.4th at p. 1197) since it cannot be reasonably said that the meaning of "unreasonable risk of danger to public safety" in the Act had the specific meaning attributed to that phrase in Proposition 47 prior to November 2014.  Thus, the new definition in Proposition 47 constitutes a "substantial or material change" from prior law.  (*Fonseca, supra,* at p. 1197.)  Accordingly, we conclude that applying the narrow definition of "unreasonable risk of danger to public safety" contained in Proposition 47 to proceedings conducted under the Act would not be to clarify the meaning of phrase, but rather, would be the adoption of an entirely new meaning of the phrase.  Thus, the clarification doctrine does not apply in this case.

Higginbotham also contends that " '[a] statute which affects a penalty is considered to be remedial in nature and will be given retroactive effect if it has the effect of mitigating the penalty.' "  (Quoting *Johnston v. Sanchez* (1981) 121 Cal.App.3d 368, 375.)  This principle of law stems from *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) in which the Supreme Court stated:

"When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Id.* at p. 745.)

Such cases include "acts committed before [the new statute's] passage provided the judgment convicting the defendant of the act is not final." (*Estrada, supra*, 63 Cal.2d at p. 745.) Thus, under *Estrada*, a statute that lessens punishment is presumed to apply to all cases not yet reduced to final judgment on the statute's effective date. (*Id.* at pp. 744-745.)

However, *Estrada* does not apply in this case because applying the definition of "unreasonable risk of danger to public safety" in Proposition 47 to petitions for recall of sentence under the Act would not reduce punishment for a particular crime. (See *People v. Brown, supra,* 54 Cal.4th at p. 325 [rejecting application of *Estrada* to statute that increased the rate at which eligible prisoners could earn conduct credit because the statute "does not represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent"].)

*Holder v. Superior Court of San Diego County* (1969) 269 Cal.App.2d 314, 318, upon which Higginbotham relies, does not support retroactive application of Proposition 47's definition of "unreasonable risk of danger to public safety." *Holder* involved a

statute that authorized the recall of a defendant's prison sentence, when such recall was warranted by a psychiatric study completed pursuant to a provision in the Penal Code.[12] (*Holder, supra*, at p. 316.)  The *Holder* court concluded that the statute applied to prisoners sentenced prior to the effective date of the statute, because the statute's very object was people who were currently serving a prison sentence.  (See *id.* at p. 317 ["We find no uncertainty in the provision under consideration.  Clear statutory language no more needs to be interpreted than pure water needs to be strained"].)  In this case, in contrast, Higginbotham identifies no language in Proposition 47 that would indicate an intent to apply its provisions retroactively.

Finally, Higginbotham contends that *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*) supports his position that Proposition 47's definition of "unreasonable risk of danger to public safety" applies retroactively to proceedings conducted under the Act.  In *Sandoval*, the Supreme Court fashioned "a constitutional procedure for resentencing in cases in which [*Cunningham v. California* (2007) 549 U.S. 270] requires a reversal of an upper term sentence." (*Sandoval, supra,* at p. 846.)  The *Sandoval* court directed that the remanded sentencing hearings be conducted in a manner consistent with amendments to the determinate sentencing law adopted while the cases were pending on appeal.  (*Ibid.*)

---

[12]    The statute provided, " 'When a defendant has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, if it is deemed warranted by the diagnostic study and recommendations approved pursuant to Section 5079, the court may recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he had not previously been sentenced.' " (*Holder, supra*, 269 Cal.App.2d at p. 316.)

21

In this case, there was no constitutional violation in the manner by which the trial court conducted its denial of Higginbotham's petition.[13] Thus, there is no occasion to remand the matter or determine what procedures might apply on remand. *Sandoval* is therefore inapposite.

Accordingly, we conclude that even if Proposition 47's definition of "unreasonable risk of danger to public safety" applies to petitions for recall of sentence under the Act, it does not apply retroactively to Higginbotham's petition for recall of sentence.

IV.

DISPOSITION

The order denying the petition for recall of sentence is affirmed.


AARON, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

---

13    Higginbotham also asserts that failing to apply Proposition 47's definition of "unreasonable risk of danger to public safety" retroactively would constitute a violation of due process and equal protection and amount to the imposition of cruel and unusual punishment. These assertions are presented without adequate legal argument, and thus we deem the contentions forfeited. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)