Filed 6/1/16  P. v. Hellon CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C075511 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CM016207, CM016216) |
| v. | |
| JOSHUA MOSES HELLON, | |
| Defendant and Appellant. | |

Defendant Joshua Moses Hellon appeals from the trial court's orders denying his petition for resentencing based on the court's finding that resentencing posed an unreasonable risk of danger to public safety.  He contends the trial court's decision was an abuse of discretion because it was not supported by sufficient evidence and based on an erroneous understanding of the relevant legal standard.  In a supplemental brief, defendant contends that the definition of danger to public safety found in the resentencing

1

provision of Proposition 47,[1] Penal Code section 1170.18,[2] supercedes the definition of danger to public safety found in the resentencing provision of Proposition 36,[3] section 1170.126.  We affirm the trial court's orders.

FACTUAL AND PROCEDURAL BACKGROUND

*The Current Offenses*

The facts of the offenses that are the subject of the resentencing petition are taken from our opinion affirming those convictions.

"In the early evening of September 29, 2001, a deputy was on patrol looking to serve an arrest warrant on the defendant.  He was not familiar with the defendant by sight.  The deputy saw a maroon Camaro with an expired registration tag parked on the side of the street.  The driver was talking to someone standing next to the car.  As the deputy passed, the driver looked down.  The other person got into a red Prelude and drove off.  The deputy made a U-turn and drove up to the Camaro.  The driver smiled at him, waved, and said, "bye."  The deputy was able to see his face for a few seconds; he was wearing a red bandana on his head.  The driver headed off in reverse toward the intersection to the south behind him, then drove off to the east on the cross-street.  The deputy now recognized the driver as the defendant from a police photograph, and identified the defendant in court as the driver.

"We will not provide all the particulars of the 10-minute pursuit.  It involved speeds from 45 to 80 miles per hour on both heavily trafficked and residential streets, with the defendant disregarding traffic controls, lane boundaries, center dividing lines, and other cars (nearly broadsiding one).  Over the course of the pursuit, the defendant

---

[1]	An initiative adopted by voters in 2014.

[2]	Undesignated statutory references are to the Penal Code.

[3]	An initiative adopted by voters in 2012.

2

frequently braked abruptly (which the deputy testified is intended either to force the pursuer to back off, or to hit the car ahead of him, causing his airbags to deploy and disable the car). The defendant eventually abandoned his car down a dirt road and disappeared into the brush. There was nothing in the Camaro belonging to the defendant, and the deputy did not request that the car be examined for fingerprints because he was certain the defendant was the driver." (*People v. Hellon* (May 31, 2005, C045511) [nonpub. opn.] at pp. 2-3, fn. omitted (*Hellon*).)

A search of the home of defendant's girlfriend "in July 2001 led to the discovery of items in the garage that an Oroville police officer believed were associated with manufacturing methamphetamine. He alerted the county's inter-agency drug investigators. In their more extensive search of the home and garage, the investigators collected a large number of items that they believed 'had significant evidentiary value showing that somebody had been manufacturing or attempting to manufacture methamphetamine and[/]or extracting pseudo[]ephedrine.' Latent prints on several of these items matched the defendant's. In October 2001, detectives interviewed the defendant, who admitted that he may have left fingerprints on items in his 'old lady's' place, but no one was manufacturing methamphetamine. He used muriatic acid only to extract gold from quartz, and a jar of ephedrine tablets was an herbal extract he used when exercising." (*Hellon*, *supra*, at pp. 3-4.)

A jury convicted defendant of recklessly evading police pursuit in case No. CM016207 and another jury convicted him of possession of precursors of methamphetamine with the intent to manufacture methamphetamine in case No. CM016216. (*Hellon*, *supra*, at p. 1.) The trial court sustained two strike allegations in both cases and sentenced defendant to 52 years to life. (*Ibid.*) On May 31, 2005, we affirmed the convictions in an unpublished opinion. (*Id*. at p. 2.)

On November 26, 2012, defendant filed a pro per petition for habeas corpus seeking resentencing under Proposition 36, section 1170.126. The trial court appointed

3

counsel for defendant, and defendant and the prosecution filed briefs on whether defendant should be resentenced.

*Criminal and Prison Disciplinary Record*

Defendant's criminal record "began in 1987 at age 15 with petty theft; during his wardship, he violated his probation once. In December 1990, he committed another petty theft, for which he received credit for time served in September 1991. In January 1992, he committed two counts of residential burglary and one count of forgery, for which he received a California Rehabilitation Center (CRC) commitment in June 1992. During the next three and a half years, he returned to the CRC three times, and committed the misdemeanors of resisting arrest, giving false information to a peace officer, and possessing alcohol shortly before his 21st birthday. Finally, in 1996, he was excluded from the CRC and returned to prison, then was placed on parole (which he completed in 1998). However, in September 2000, the defendant was arrested for unlawfully taking a car and drug violations. Later that month, the police responded to a noise complaint; they cited the defendant for possession of hypodermic needles." (*Hellon, supra*, at pp. 7-8, fn. omitted.)

Defendant has sustained three rules violations for mutual combat during his current prison term. On June 26, 2004, an officer told defendant and his cellmate that their cell would be searched. After the officer handcuffed defendant, the cellmate ran to defendant and struck him on the head and chest with closed fists. When the inmate ignored an order to get down, the officer sprayed the inmate with pepper spray. The officer ordered defendant and the inmate to get down; when neither complied, another officer sprayed pepper spray into the cell. Defendant, who was on his back, started kicking the inmate, who continued to strike defendant in the face. When defendant and the inmate ignored another order to get down, a sergeant sprayed more pepper spray in the cell, which ended the fight.

4

On October 7, 2007, an officer noted blood on the floor of defendant's cell. Defendant and his cellmate both had injuries consistent with mutual combat. Defendant and his cellmate admitted to drinking "pruno"[4] and having a wrestling match, which got out of hand.

Defendant's last mutual combat violation took place on March 6, 2008, when an officer noticed defendant fighting another inmate on the upper tier of "A" section. The combatants ignored the officer's command to get down; they did not stop fighting until an officer sprayed them with pepper spray.

Defendant also sustained a felony conviction during his current prison term. In 2007, defendant was convicted of importing a controlled substance into prison (§ 4573) with a prior strike and sentenced to an additional eight-year term after a person visiting defendant was found to have a balloon filled with 7.7 grams of methamphetamine.

*Other Evidence*

In a letter to the trial court, defendant stated he committed the importing controlled substances offense because he was in a prison gang at the time, and of the two ways to further a prison gang, drugs or violence, defendant chose the former. Following the incident, defendant became a validated dropout of his former gang, placing his life in danger and causing him to be housed in the sensitive needs area of the prison.[5]

Defendant was certified as an emergency medical technician and completed medical specialist training while in the Army in 1991. He completed the requirements for a Class A commercial driver's license in 1998. The owner of an Oregon trucking company was willing to employ defendant as a driver upon defendant's release from

---

[4] Pruno is an alcoholic drink brewed illicitly by prison inmates. (See *People v. Abilez* (2007) 41 Cal.4th 472, 489.)

[5] Department of Corrections and Rehabilitation records show that defendant began debriefing to drop out of the gang in May 2007.

prison. Defendant converted to Catholicism in 2008. He had secured a sponsor to help him with his drug addiction when released from prison. Defendant had completed one semester through Lassen Community College in 2008, getting honors for his grades. He received the lowest possible score, a "one," on the Comprehensive Static Risk Assessment.

Defendant and his counsel argued in favor of the petition at the hearing. Regarding the mutual combat violations, defendant said he was the victim of the attack in the 2004 incident, the 2007 incident was no more than drinking alcohol and rough housing, and admitted that the 2008 incident involved mutual combat.

Defendant told the trial court he was a drug addict. Before the incidents leading to his three strikes sentences, defendant had remained free of drugs for five years, started his own business, and was in a "wonderful relationship" with a woman. He then was unfaithful to his significant other, and in the process of trying to save his relationship, lost both his business and his family's faith in him, causing him to relapse.

The incident leading to his conviction for importing a controlled substance into prison took place during a particularly dark period in defendant's life, after the defeat of an initiative to repeal the "Three Strikes" law. Following his conviction on the importation offense, defendant "immediately dropped out of the gang, surrendered to something greater than [himself] and among the drug infested waters of prison put together seven years of sobriety day by day." He admitted to not being involved in Narcotics Anonymous or Alcoholics Anonymous while in prison, asserting the prison versions of those programs were shams. Defendant also admitted to relapsing on drugs once, six months before the December 2013 hearing.

*The Ruling*

In denying the petition, the trial court relied most heavily on defendant's criminal record. Defendant's prior strikes were less important to the court's analysis, which focused more on the felony evading and possession of precursors to manufacture

6

methamphetamine, even though those crimes were neither serious nor violent felonies. The trial court found that "the spirit of Prop 36" was that "it would be unfair to send someone away for simple possession of a drug offense or a property crime." The felony evading and possession of methamphetamine precursors offenses were more serious than auto theft or a simple possession crime. Accordingly, "based on everything that has been presented," the trial court exercised its discretion and determined that resentencing defendant posed an unreasonable risk of danger to public safety.

DISCUSSION

I

Defendant contends the trial court's denial of his petition was an abuse of discretion because the court applied the wrong legal standard to his petition and the ruling was not supported by substantial evidence. We disagree with both contentions.

A.

Following the Three Strikes Reform Act of 2012 (the Act), a defendant convicted of a felony with two or more prior strike allegations is subject to a sentence of 25 years to life if the current conviction is a serious or violent felony but is subject only to a two-strike sentence if the current felony is not serious or violent. (§§ 667, subd. (e)(2)(A), (C), 1170.12, subd. (c)(2)(A), (C); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 170 (*Yearwood*).) "Sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C) contain four exceptions to the new restriction on imposition of a third strike sentence. Three exceptions relate to the nature of the current felony and one exception relates to the nature of the offender's prior felony convictions. If the prosecution pleads and proves one of the four exceptions, the offender will be sentenced as a third strike offender." (*Yearwood*, *supra*, at p. 170.)

Section 1170.126 allows a person presently serving a three strikes sentence for a felony that is neither serious nor violent to petition for resentencing as a second strike offender. (§ 1170.126, subd. (a).) A prisoner is disqualified from resentencing if his

7

current conviction or criminal record come within the four disqualifying factors listed in sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C). (§ 1170.126, subd. (e).) If the prisoner is not subject to one of the disqualifying factors, then the trial court shall resentence him under the two strikes provision "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In making this determination, "the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

Defendant contends the trial court abused its discretion because it did not understand that section 1170.126 created "a presumption and an expectation" in favor of resentencing "that is overcome only if the court in its discretion finds the petitioner would present an unreasonable risk of danger to public safety if resentenced." According to defendant, this presumption is created by the use of the terms "shall" and "unless" in subdivision (f) of section 1170.126. Defendant bases his reading of these terms on what he sees as the purpose of the Act, to reserve "life sentences for dangerous criminals like rapists, murderers, and child molesters" and reduce the terms for "low-risk, non-violent inmates" convicted of "minor" or "petty crimes." (Prop. 36, § 1, Findings and Declarations, subds. (4) & (5), p. 105.) From this reading, he concludes that the section 1170.126 hearing is the converse of a hearing on a motion to strike a prior strike conviction, so that resentencing will be denied only upon "extraordinary cases upon proof of current dangerousness." (Cf. *People v. Philpot* (2004) 122 Cal.App.4th 893, 907 [striking prior strike reserved for extraordinary circumstances].)

8

The text of section 1170.126, subdivision (f) does not include language creating a presumption. Subdivision (f) states: "Upon receiving a petition for recall of sentence under this section, the court shall determine whether the petitioner satisfies the criteria in subdivision (e). If the petitioner satisfies the criteria in subdivision (e), the petitioner shall be resentenced pursuant to paragraph (2) of subdivision (e) of Section 667 and paragraph (1) of subdivision (e) of Section 1170.12 unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."

As explained by Second Appellate District, Division 3, dangerousness is a hurdle that must be overcome in order for a defendant to be resentenced. "[S]ection 1170.126, subdivision (f) does not state that a petitioner eligible for resentencing has his sentence immediately recalled and is resentenced to either a second strike term (if not dangerous) or a third strike indeterminate term (if dangerousness is established). Instead, the statute provides that he 'shall be resentenced' to a second strike sentence 'unless the court . . . determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' In other words, dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all. If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the prisoner, and the petitioner simply finishes out the term to which he or she was originally sentenced." (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1302-1303, fn. omitted.) Agreeing with *Kaulick*, we do not read the text as creating a presumption for resentencing.

Even if we consider the text ambiguous as to whether there is a presumption in favor of resentencing (see *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1372 [finding ambiguous section 190.5, which stated a defendant, 16 years of age or older and under the age of 18, convicted of special circumstances murder, "shall be confine[d] in the state

prison for life without possibility of parole or, at the discretion of the court, 25 years to life"]), we first turn to the Act's legislative history to resolve any possible ambiguity. "Where there is ambiguity in the language of the measure, '[b]allot summaries and arguments may be considered when determining the voters' intent and understanding of a ballot measure.' [Citation.]" (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037.) The Voter Information Guide states that the Act "[a]uthorizes re-sentencing for offenders currently serving life sentences if third strike conviction was not serious or violent and judge determines sentence does not pose unreasonable risk to public safety." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) p. 48.) This description of the resentencing provisions of the Act is inconsistent with a presumption in favor of resentencing. Accordingly, we conclude the trial court's discretion under section 1170.126, subdivision (f) is not circumscribed by a presumption in favor of resentencing.

We likewise reject defendant's contention that a section 1170.126 petition for resentencing is the converse of a motion to strike one or more strikes. Our Supreme Court found the Three Strikes law was intended "to restrict courts' discretion in sentencing repeat offenders" based on the ballot arguments stating that the law would not allow a sentencing court to "grant probation, suspend execution or imposition of sentence [citations], divert the defendant, or commit the defendant to any facility other than state prison [citations]." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 528.) In contrast, the Act specifically grants the trial court discretion to deny a defendant's petition for resentencing based on the risk of resentencing to public safety and contains no text or history limiting that discretion. Accordingly, a trial court exercises its discretion in applying section 1170.126 as it does in the many other instances where the Legislature vests discretion with the trial court. Since the record fails to establish the trial court did not understand its discretion, there was no legal error and therefore no abuse of discretion.

10

B.

A trial court's denial of a section 1120.126 petition because resentencing defendant would pose an unreasonable risk of danger to public safety is reviewed for abuse of discretion. In the context of sentencing decisions, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

The factual findings which form the basis of the trial court's unreasonable risk determination are themselves subject to review under the equally familiar substantial evidence standard. Accordingly, we review the entire record in the light most favorable to the court's factual findings to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could make those factual findings by a preponderance of the evidence. (Cf. *People v. Bolin* (1998) 18 Cal.4th 297, 331.) But if the factual findings are not supported by substantial evidence, they cannot form the basis for an unreasonable risk determination. (See *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [court abuses discretion when factual findings critical to decision find no support in evidence].)

Defendant claims his criminal history, which he characterizes as "absolutely devoid of violence," does not support the trial court's ruling. He notes that his prior strikes were residential burglaries which were committed close together when he was a teenager and are "now in the distant past." While defendant failed his CRC commitment and was ultimately sentenced to prison, he notes that following his release from prison, he successfully completed parole and started his own trucking business. Defendant additionally points out that the convictions for which he is serving his three strikes terms constituted only his second prison sentence.

Defendant finds his prison record equally unavailing in support of the trial court's ruling, relying on the lack of any prison disciplinary violations in the nearly six years leading up to his resentencing petition. Defendant additionally points out that he has

11

been reformed in prison, leaving his gang, cooperating with law enforcement regarding his former gang's activities, and was now involved in church and continuing his education. He has also remained largely drug free, relapsing only once though very recently, since he left his gang.

Defendant also finds other factors which allegedly undermine the trial court's ruling. He says the prosecution offered a plea agreement where he would admit to the two charged offenses and a single strike, with a maximum term of 16 years eight months. Defendant asserts his being over 40 years old makes him less likely to reoffend when released. Finally, defendant claims the trial court should have considered the central purpose of Proposition 36, "a more rational and cost-effective allocation of the crippling expenses of California's prison system in a way that enhances rather than detracts from public safety," and accordingly looked at "fiscal considerations in determining individual inmates' resentencing petitions."

Although defendant claims the trial court abused its discretion by basing its decision on findings of fact not supported by the evidence, the court did not make any separate findings of fact. It found defendant's current offenses of felony evasion and possession of precursors with intent to manufacture are more serious than simple auto theft and felony drug possession. The court simply assigned different weights to the various factors it considered. The court's stated basis for its judgment, that it relied on all the evidence submitted but that defendant's criminal record was the most important, likewise does not involve any finding of fact.

Defendant's contentions instead go to the trial court's exercise of its discretion based on its considering and weighing the essentially undisputed facts of defendant's criminal record, prison record, and prospects if released. Based on the facts in this record, we cannot find an abuse of discretion.

The trial court correctly noted defendant's instant offenses, while not serious or violent, are still significant. The acts underlying defendant's reckless evading conviction

12

presented a danger to public safety. Likewise, possessing the precursors to manufacture methamphetamine raises the possibility of defendant manufacturing the drug, a dangerous process in itself, and then introducing that dangerous drug to society.

Defendant's prison record also supports the trial court's decision. His three mutual combat violations show a willingness to engage in violent behavior.[6] Defendant also managed to commit another felony while serving his current term when he tried to import methamphetamine into prison. While defendant may have improved his behavior since the 2007 conviction, the trial court was not required to ignore his serious misbehavior earlier in his current incarceration.

The other factors cited by defendant likewise do not support a finding of abuse of discretion. Defendant's age may indicate he is less likely to reoffend if released but this factor is not dispositive. The other factors cited by defendant, the prosecution's plea offer and the purported purpose of Proposition 36, section 1170.126, are irrelevant. The fact the prosecution may have offered a plea agreement for a lesser sentence does not diminish the legality of defendant's three strikes sentence or the gravity of the conduct that led to his current prison term. The electorate's intent in enacting Proposition 36 is embodied in the statutory text of that initiative, including section 1170.126, which vests discretion in the trial court to determine whether resentencing defendant would pose an unreasonable risk of danger to public safety and what evidence to consider when exercising its discretion. (§ 1170.126, subd. (g).) That provision does not require the trial court to consider any particular factor when exercising its discretion, including the impact on public finance of denying the petition. (*Ibid.*)

---

**6** While defendant may have initially been the victim in the 2004 incident, he chose to ignore orders to get down and continued to engage in mutual combat with his cellmate.

13

In light of defendant's current offenses, his criminal history, and his conduct in prison, the denial of defendant's resentencing petition was neither so arbitrary nor so irrational as to constitute an abuse of discretion.

## II

In a supplemental brief, defendant claims the standard for determining dangerousness enacted in Proposition 47, section 1170.18, should apply to his resentencing hearing.[7]

The stated "[p]urpose and [i]ntent" of Proposition 47 include, among other things, "[r]equir[ing] misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes"; "[a]uthoriz[ing] consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors"; and "[r]equir[ing] a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, subds. (3), (4) & (5), p. 70.)

Proposition 47 also enacted section 1170.18, under which "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence . . . [and] request resentencing . . . ."

"If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . unless the

---

[7] This issue is currently before the California Supreme Court. (See, e.g., *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Feb. 18, 2015, S223825; *People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted Feb. 18, 2015, S223676.)

14

court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.  In exercising its discretion, the court may consider all of the following:  [¶]  (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes.  [¶]  (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated.  [¶]  (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

Defendant asserts the definition of "unreasonable risk of danger to public safety" in section 1170.18 supersedes the definition of that term in section 1170.126 as applied in his case.  According to defendant, section 1170.18 is a "remedial resentencing mechanism" that is therefore "entitled to the fullest retroactive application."  He claims that failing to give retroactive application raises equal protection and due process problems by creating two classes of section 1170.126 petitioners, based on whether the petition is filed before or after section 1170.18's effective date.

The general rule is that any penal statute is not "retroactive, unless expressly so declared."  (§ 3.)  Furthermore, prospective only application of changes in the law reducing punishment for crime does not violate a defendant's constitutional rights. (*Yearwood, supra*, 213 Cal.App.4th at pp. 178-179.)  The best support for defendant's contention is found in the rule of retroactivity set forth in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  Under the *Estrada* rule, a legislative amendment that lessens criminal punishment is presumed to apply to all cases not yet final (the Legislature deeming its former penalty too severe), unless there is a "saving clause" providing for prospective application.  (*Id*. at pp. 742, 745, 748.)

*Estrada* does not apply here because applying the definition of "unreasonable risk of danger to public safety" in Proposition 47 to petitions for resentencing under the Act

15

does not reduce punishment for a particular crime. Rather, it arguably changes the lens through which the dangerousness determinations under the Act are made.

This is consistent with our Supreme Court's most recent interpretation of *Estrada*. "*Estrada* is . . . properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*People v. Brown* (2012) 54 Cal.4th 314, 324 (*Brown*).) Expanding *Estrada's* scope to include the definition of "unreasonable risk of danger to public safety" in Proposition 47 in a petition for resentencing under the Act would conflict with section 3's "default rule of prospective operation" (*Brown, supra*, at p. 324.) Since there is no evidence in Proposition 47 that this definition was to apply retrospectively to petitions for resentencing under the Act, applying *Estrada* here would be improper given that the definition of "unreasonable risk of danger to public safety" in Proposition 47 does not reduce punishment for a particular crime. Therefore, the definition of "unreasonable risk of danger to public safety" found in Proposition 47, section 1170.18, does not apply to Proposition 36, section 1170.126, petitions for resentencing decided before the effective date of Proposition 47.[8]

Accordingly, we reject defendant's request for retroactive application of the language in section 1170.18 to his petition for resentencing pursuant to section 1170.126.[9]

---

[8] Defendant also relies on *Holder v. Superior Court* (1969) 269 Cal.App.2d 314. Since *Holder* was decided before the Supreme Court's interpretation of *Estrada* in *Brown*, it is inapposite. We have no occasion to address application of Proposition 47, section 1170.18, to resentencing petitions filed after its effective date.

[9] At oral argument, defendant raised a new issue: whether the trial court, in addition to being required to determine defendant's eligibility for resentencing on a count-by-

16

DISPOSITION

The trial court's orders are affirmed.

      NICHOLSON     , Acting P. J.

We concur:

      DUARTE      , J.

      HOCH      , J.

---

count basis, must also determine defendant's dangerousness on a count-by-count basis. We need not consider that issue because defendant forfeited it by failing to raise it until oral argument.  (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.)