Filed 8/15/16  P. v. Knight CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077468 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F04539) |
| v. | |
| VONTRE KNIGHT, | |
| Defendant and Appellant. | |

Defendant Vontre Knight appeals from the trial court's order denying his petition for resentencing pursuant to Penal Code section 1170.126[1] based on the court's finding that resentencing would pose an unreasonable risk of danger to public safety.  He contends that the definition of danger to public safety found in the resentencing provision of Proposition 47, section 1170.18, applies to the danger to public safety finding under

---

[1]    Undesignated statutory references are to the Penal Code.

1

section 1170.126. He additionally contends that the denial of his petition was an abuse of discretion. We affirm the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND

We take the facts of defendant's current offenses from our opinion affirming his current conviction.

"On July 12, 2010, Sacramento Police Officer Matthew McPhail, on duty, in full uniform and driving a marked car, heard a horn honking repeatedly. McPhail then saw two vehicles turn from westbound Second Avenue on northbound Franklin Boulevard. The lead vehicle was a Chevrolet SUV (driven by defendant); the second was a Cadillac sedan. Both vehicles were speeding. It appeared to McPhail that the Cadillac was chasing the SUV and honking its horn; McPhail followed the vehicles. Both vehicles soon made a right turn against a red light, then immediately turned right onto southbound Highway 99.

"Officer McPhail continued to follow both vehicles and watched them move from the number four lane to the number two lane, then quickly move back to the right side of the roadway. In an effort to stop both vehicles, McPhail activated his overhead lights. The Cadillac slowed slightly and moved one lane to the left. Defendant increased his speed.

"Officer McPhail increased his speed and pulled his patrol car behind defendant's SUV. He was receiving information regarding the vehicles from 'dispatch' when he saw defendant swerve out of the dedicated exit lane at Fruitridge and back into the southbound freeway lane. McPhail then turned on his siren. Defendant remained in the right-most lane and sped up to approximately 70 miles per hour.

"As defendant approached the Martin Luther King Jr. Boulevard overpass, he 'aggressively' slowed the SUV and made an 'abrupt' right turn, leaving skid marks on the highway. Defendant then crossed over the on-ramp freeway entrance onto southbound Highway 99. Defendant left the roadway through a narrow opening between

2

a large tree and a freeway guard rail. Defendant then drove the SUV through the landscaped area inside the circular freeway on-ramp.

"Officer McPhail did not follow defendant through the landscaped area, so there were moments when McPhail could not see the SUV. McPhail did, however, see the SUV leave the landscaped area and enter the one-way freeway on-ramp traveling opposite the direction of traffic. Defendant drove the SUV against traffic for approximately one-third the length of the on-ramp. A Land Rover had to swerve to avoid colliding with the SUV.

"Defendant then sped over the Martin Luther King Jr. Boulevard overpass. And, while Officer McPhail drove nearly 65 miles per hour in pursuit of defendant, defendant continued to increase the distance between himself and McPhail. Defendant then turned the SUV onto 35th Avenue and McPhail again lost sight of him for a few seconds. When he saw the SUV again, it was stopped in front of a residence approximately three houses north of the intersection at Mascot and 35th Avenues. The SUV's lights were on, the driver's door was open, and defendant was running north, away from the SUV.

"Officer McPhail drove his patrol car in the direction defendant ran. He saw defendant crouching against a fence in a residential yard. McPhail ordered defendant to 'give up.' Instead, defendant jumped over an adjacent chain-link fence and entered the side yard of the residence next door, at which point McPhail lost sight of defendant.

"A perimeter search was initiated. The police officers were told that a resident heard noises coming from her bathroom. The police searched her home with the help of a canine officer. They found defendant hiding inside the woman's bathtub, behind the shower curtain." (*People v. Knight* (Oct. 10, 2013, C068030) [nonpub. opn.] slip opn. at pp. 2-4.)

A jury convicted defendant of felony evading an officer (Veh. Code, § 2800.2, subd. (a)) and evading an officer while driving on a highway opposite the direction of

3

traffic (Veh. Code, § 2800.4).  The trial court sustained four strike allegations and sentenced defendant to 25 years to life.

Defendant subsequently filed a petition for resentencing pursuant to section 1170.126.  In a letter attached to the brief in support of the petition, defendant stated he has started to understand the cause and effect of drug and alcohol abuse on his behavior after attending AA/NA (Alcoholics Anonymous/Narcotics Anonymous) meetings in 2012.  While serving his current term, defendant chose to leave his gang and has been removed from the general population prison yard.  He had learned to walk away from any incident that holds the potential for violence, and has matured a lot in the last few years.  The brief in support of the petition also contained appended supporting letters from defendant's wife and stepson, and certificates of completion for conflict resolution, parenting, math, and other courses.

Defendant's criminal and prison disciplinary record is as follows:

In 1991, he was convicted of misdemeanor hit-and-run (Veh. Code, § 20001) and was sentenced to a 13-day jail term.  In 1992, he pleaded no contest to misdemeanor receiving stolen property (former § 496.1) and was placed on three years of informal probation.

In 1993, defendant pleaded guilty to two counts of second degree robbery (§ 211), assault with a firearm (§ 245, subd. (a)(2)), vehicle theft (Veh. Code, § 10851, subd. (a)), attempted arson (§§ 455, 664), arson (§ 451, subd. (d)), and admitted being armed with a firearm allegations (former § 12022, subd. (a)).  He was sentenced to six years in state prison.  While on parole for these crimes, defendant was convicted of misdemeanor corporal injury to a spouse or cohabitant (§ 273.5) and sentenced to a year in county jail.  He sustained a conviction for resisting an officer (§ 148, subd. (a)(1)) and was sentenced to three years of informal probation in 2001.

Defendant was convicted of grand theft (§ 487, subd. (a)) with a strike prior (§ 1170.12) and sentenced to 32 months in state prison in 2002.  In 2008, he was

4

convicted of felony possession of a controlled substance (Health & Saf. Code, § 11350) and sentenced to 16 months in state prison.  He was on parole from this offense when he committed his current offenses.

According to the People's opposition to defendant's resentencing petition, defendant sustained 10 parole violations or returns to custody on parole in addition to his various criminal convictions while on parole.

While incarcerated for his current offenses, defendant sustained prison disciplinary violations in January 2012, March 2013, April 2013, and October 2013 for, among other things, failure to report to his job assignment.  In March 2014, defendant was found guilty of violating prison rules by possessing alcohol.  The Department of Corrections and Rehabilitation records also show that in 2011, defendant wished to disassociate himself with his gang and was placed in administrative segregation.  Defendant also completed numerous education and counseling classes while serving his current term.

At the contested hearing on his motion, defendant testified that drugs and alcohol contributed to his criminal behavior.  Rehabilitative programs undertaken during his current incarceration have allowed him to learn how to conduct himself as a productive citizen.  Admitting he has write-ups for rules violations during his current incarceration, defendant also stated that he quit his gang and no longer associates with gang members.

Defendant kept in touch with his wife and her children during his incarceration, and they will provide him support upon his release.  Defendant will go to AA/NA meetings, get a job, and continue to take medication for his mental health problems.[2]  He has converted to Islam, and is remorseful for what he has done to his victims.

---

[2]    In prison, defendant has received diagnoses for antisocial personality disorder and adjustment disorder with anxious mood.

Defendant's wife, a church minister, testified that they have kept in contact while he is in prison. Defendant has changed, having now admitted he has problems. He is remorseful and will now "go forth and do what's necessary."

The trial court denied the petition, finding that defendant's resentencing would pose an unreasonable risk of danger to public safety. The court considered defendant's "age, social factors, criminal history, substance abuse, his conduct, favorable and unfavorable," before reaching its decision. It noted that defendant's prior strikes involved very dangerous and violent conduct. While favorably citing defendant's decision to change his life, the support of his wife and family, and his attempts to improve himself in prison, the court found the "bulk" of defendant's life showed "a much more negative picture," in particular his unwillingness to comply with the law. The court was astonished that it was hard to find a period of even six months where defendant was on parole without him committing a new offense or engaging in conduct that led him to being confined again. Defendant had prior felony convictions where he was potentially subject to, but did not receive, three strikes sentences. In addition, he was on parole when he committed his current offenses. Defendant's current crime, while not a serious or violent felony, nonetheless involved a "very aggravated chase" that posed a high risk to defendant, the officers pursuing him, and nearby pedestrians and drivers. After considering these factors, the court concluded the evidence did not show defendant had sufficiently changed to warrant release as he still posed a danger to the community if released.

DISCUSSION

I

Defendant argues the standard for determining dangerousness enacted in Proposition 47 should apply to his resentencing hearing.[3]

The stated "[p]urpose and [i]ntent" of Proposition 47 include, among other things, "[r]equir[ing] misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes"; "[a]uthoriz[ing] consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors"; and "[r]equir[ing] a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, subds. (3), (4) & (5), p. 70.)

Proposition 47 also enacted section 1170.18, under which "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence . . . to request resentencing." (§ 1170.18, subd. (a).)

"If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety. In exercising its discretion, the court may consider all of the following: [¶] (1) The petitioner's criminal conviction history,

---

[3] This issue is currently before the California Supreme Court. (See, e.g., *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Feb. 18, 2015, S223825; *People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted Feb. 18, 2015, S223676.)

7

including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes. [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated. [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

Defendant asserts the definition of "unreasonable risk of danger to public safety" in section 1170.18 supersedes the definition of that term in section 1170.126 as applied in his case. His argument is primarily based on the rule of retroactivity set forth in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). Under the *Estrada* rule, a legislative amendment that lessens criminal punishment is presumed to apply to all cases not yet final (the Legislature deeming its former penalty too severe), unless there is a "saving clause" providing for prospective application. (*Id.* at pp. 742, 745, 748.) According to defendant, section 1170.18, like section 1170.126, is remedial legislation that is therefore "entitled to the fullest retroactive application."

*Estrada* does not apply here because applying the definition of "unreasonable risk of danger to public safety" in Proposition 47 to petitions for resentencing under the Three Strikes Reform Act of 2012 (the Act) does not reduce punishment for a particular crime. Rather, it arguably changes the lens through which the dangerousness determinations under the Act are made.

This is consistent with the Supreme Court's most recent interpretation of *Estrada*. "*Estrada* is . . . properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*People v. Brown* (2012) 54 Cal.4th 314, 324 (*Brown*).) Expanding *Estrada's* scope to include the definition of "unreasonable risk of danger to public safety"

8

in Proposition 47 in a petition for resentencing under the Act would conflict with "section 3['s] default rule of prospective operation." (*Brown, supra*, at p. 324.) Since there is no evidence in Proposition 47 that this definition was to apply retrospectively to petitions for resentencing under the Act, applying *Estrada* here would be improper given that the definition of "unreasonable risk of danger to public safety" in Proposition 47 does not reduce punishment for a particular crime. Therefore, the definition of "unreasonable risk of danger to public safety" found in Proposition 47 does not apply to section 1170.126 petitions for resentencing decided before the effective date of Proposition 47.[4]

We accordingly reject defendant's request for retroactive application of the language in section 1170.18 to his petition for resentencing pursuant to section 1170.126.

II

Defendant contends the trial court's denial of his petition was an abuse of discretion. He claims the ruling was an abuse of discretion because there was significant evidence of defendant's rehabilitation and no evidence of his future dangerousness. We disagree.

Following the Act, a defendant convicted of a felony with two or more prior strike allegations is subject to a sentence of 25 years to life if the current conviction is a serious or violent felony but is subject only to a two strike sentence if the current felony is not serious or violent. (§§ 667, subd. (e)(2)(A), (e)(2)(C), 1170.12, subd. (c)(2)(A), (c)(2)(C); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 170.) "Sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C) contain four exceptions to the new restriction on imposition of a third strike sentence. Three exceptions relate to the

---

[4]     Defendant also relies on *Holder v. Superior Court* (1969) 269 Cal.App.2d 314. Since *Holder* was decided before the Supreme Court's interpretation of *Estrada* in *Brown*, it is inapposite.

9

nature of the current felony and one exception relates to the nature of the offender's prior felony convictions. If the prosecution pleads and proves one of the four exceptions, the offender will be sentenced as a third strike offender." (*Yearwood*, *supra*, at p. 170.)

Section 1170.126 allows a person presently serving a three strikes sentence for a felony that is neither serious nor violent to petition for resentencing as a second strike offender. (§ 1170.126, subd. (a).) A prisoner is disqualified from resentencing if his current conviction or criminal record come within the four disqualifying factors listed in sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C). (§ 1170.126, subd. (e).) If the prisoner is not subject to one of the disqualifying factors, then the trial court shall resentence him under the two strikes provision "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In making this determination, "the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

We review the trial court's decision under the abuse of discretion standard. (*People v. Losa* (2014) 232 Cal.App.4th 789, 791.) Applying this standard, we determine whether the trial court's ruling "exceeds the bounds of reason or is arbitrary, whimsical or capricious. [Citations.] This standard involves abundant deference to the trial court's rulings." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.)

The trial court carefully considered all of the evidence presented. It recognized defendant's recent efforts to turn his life around, but concluded they were insufficient given defendant's history of nearly continuous criminal conduct, parole violations, or incarceration, the severity of his prior strikes, and the dangerousness of his current

10

offenses.  Based on this record, the trial court's conclusion was neither arbitrary nor capricious, and was well within its discretion.

## DISPOSITION

The trial court's order is affirmed.


     NICHOLSON     , Acting P. J.


We concur:


     MURRAY     , J.


     RENNER     , J.